The plaintiffs, husband and wife, reside in the city of Shelton. They brought this action against two related corporations, hereinafter sometimes collectively referred to as the defendant, who were engaged in the business of selling and installing swimming pools. Their claims arise out of a contract between the plaintiffs *Page 109 
and the defendant, dated February 17, 1969, for the sale and installation of a Stylarama "Wavecrest" aboveground swimming pool, for the price of $3690.
 I
The first count of the complaint claims that the pool was installed by the defendant in May, 1969, at the plaintiffs' home in Shelton, that the pool was not of merchantable quality, and was in breach of the defendant's implied warranty of merchantability, in that it had the following defects: (a) the vinyl liner was improperly installed, (b) there were six or more large "flaps" in the liner, (c) all four corners of the liner were wrinkled and folded, (d) there were multiple wrinkles and folds in the liner, (e) there was inadequate support under the plywood deck, resulting in the deck being uneven, unsteady, and dangerous to persons using the pool, (f) there were multiple surface "bubbles" on the plywood decking, (g) the "hopper" portion of the deep end of the pool was improperly located and constructed, (h) the sides of the pool were bowing out, and the 2" x 4" wooden supports were rotted, twisted and misaligned, (i) the plywood panels of the deck and of the sides of the pool, and the wooden members and sills supporting those panels, were rotted and defective, (j) the workmanship of the installation of the 2" x 4" members supporting the deck was defective, and (k) the entire swimming pool was not level.
The first count further states that, as a result, the pool was not in usable condition and that the plaintiffs lost the use thereof for a long period of time. The plaintiffs contend that they were thereby obligated to expend substantial sums of money for repairs, replacement parts, and commercially supplied water. The plaintiffs allege *Page 110 
that, as a consequence, the pool was not "feasibly repairable," and was dismantled and disposed of in May, 1973, at the plaintiffs' expense.
The second count asserts that in or about October, 1971, the plaintiffs and the defendant entered into an oral contract, whereby the defendant was to remedy "all of the defects in that pool" in consideration of the plaintiffs' paying the defendant $300. The plaintiffs claimed that on May 3, 1972, they paid $200 in advance to the defendant, and that the defendant breached the agreement in that it failed to remedy the defects named in the oral contract.
The defendant filed three special defenses. The first states that any damages sustained by the plaintiffs were the result of their own carelessness and negligence in that they failed to paint the pool in accordance with the contract terms. The second special defense contends that any claimed damages occurred following the expiration of any applicable warranty period. The third special defense alleges that any damages sustained were the result of the plaintiffs' carelessness and negligence, in that they failed to make reasonable inspection of the pool, failed to maintain it properly, and allowed the pool to deteriorate without taking appropriate precautionary action.
 II
The initial question is whether the plaintiffs have any cause of action whatsoever, under the first count, for breach of implied warranty, or otherwise, based on the Uniform Commercial Code, hereinafter referred to as the UCC. In particular, the plaintiffs rely on the defendant's breach of "implied warranty of merchantability," as contained in § 42a-2-314 (1) of the General Statutes.
The UCC article on sales applies solely to "transactions in goods." General Statutes § 42a-2-102. *Page 111 
The UCC defines "goods" to be "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale. . . ." General Statutes § 42a-2-105 (1). Thus, if the present agreement is not one which could be called a "transaction in goods," or a sale of "goods," it does not fall within the warranty or other provisions of the UCC.
The initial terms of the contract between the plaintiffs and the defendant provided merely that the defendant would "furnish all labor and materials, description of Goods and Services below . . . and to construct pool . . . furnish and install swimming pool with vinyl liner. Complete with built in fence and stairs." It is important to note, thus, that the contract describes the transaction as a furnishing of labor and materials. It does not label the arrangement as a "sale" of the pool. There was no allocation, or price breakdown, in the contract between the labor and material involved in the completed installation, for a total of $3690. It is clear that where the contract is basically one for the rendition of services, and the materials are only incidental to the main purpose of the agreement, the contract is not one for the sale of goods under the UCC. Epstein v. Giannattasio, 25 Conn. Sup. 109
(beauty parlor treatments). In Epstein, the court stated (p. 113) as follows: "Building and construction transactions which include materials to be incorporated into the structure are not agreements of sale." (Citing numerous cases.) In accord, see Vernali v. Centrella, 28 Conn. Sup. 476,481.
Based on the terms of the agreement herein, plus the evidence, the principal items were not only the materials and equipment but also the labor and services necessary to install and complete the pool. *Page 112 
In the relevant case of Ben Construction Corporation
v. Ventre, 23 App. Div. 2d 44, the contractor sued for the balance due, under a contract for installation of a swimming pool on the defendants' property. The defendants counterclaimed for rescission, seeking a return of sums paid on account, and for damages under the New York Personal Property Law § 150 (McKinney 1962). The court, in a split decision, held that the personal property law was inapplicable, since the transaction basically did not involve a sale of property. It stated (pp. 44-45): "In our view the Personal Property Law does not apply to this case. For this law to apply the transaction must be one for the sale of property as distinguished from the rendition of services (Perlmutter v. Beth David Hosp.,308 N.Y. 100). In determining whether a contract is for sale of property or services the main objective sought to be accomplished by the contracting parties must be looked for. Here the written contract itself was for the installation of a swimming pool. Also the obvious objective of the defendants was to have a usable installed swimming pool and this is what they contracted for. This is a contract for work, labor and services, and not a sale. . . ."
The Ben case was cited with approval, and followed in Schenectady Steel Co. v. Trimpoli ConstructionCo., 43 App. Div. 2d 234, involving an action by a seller of steel against a buyer, who had canceled the contract. The crucial contract provisions (in general, similar to those in the present case) obligated (p. 237) the plaintiff to "furnish and erect structural steel." The majority of the court found that the defendant was contracting not merely for steel beams but, in essence, for the services or labor involved in their erection and installation and that the transfer of title to the steel was a mere incident of the overall transaction. The *Page 113 
court therefore held that this was a contract for the rendition of services, or a work, labor and materials contract, rather than a contract for the sale of goods. It was concluded that the UCC did not apply to the agreement in question.
In the present case it is obviously impossible, or extremely difficult, to effect a separation of the labor or services from the material and equipment. The two component parts do not readily permit that cleavage. The plaintiffs did not offer any adequate evidence on the apportionment issue at trial. The plaintiffs had the burden of proof to establish the existence of a warranty under the UCC, and they failed to do so. Chamberlain v. Bob MatickChevrolet, Inc., 4 Conn. Cir. Ct. 685, 692.
Accordingly, it is found that the 1969 agreement herein was not a "transaction in goods," within the meaning of § 42a-2-102, or a sale of "goods," under § 42a-2-105 (1). The plaintiffs' claim under the first count cannot be sustained.
 III
The conclusion reached in part II hereinabove is fully dispositive of the first count. Some additional comments seem appropriate, however, in view of the remaining issues litigated by the parties.
The most substantial dispute pertained to the existence of an applicable warranty, and the duration thereof. The defendant urges that the only controlling provision is the one-year express warranty, as contained in a written document delivered by the defendant to the plaintiffs at the time that the plaintiffs executed a completion certificate in or about June, 1969. The warranty covered the material and workmanship for a period of one year. It also stated that the vinyl liner carried a ten-year warranty, and the filter was subject to a *Page 114 
one-year warranty, pursuant to the warranties offered by the original manufacturers on those items.
The warranty certificate did not specify a definite commencement or termination date. Nevertheless, the logical conclusion is that it took effect on the plaintiffs' delivery of the completion certificate in June, 1969.
The blunt fact is that the pool was in satisfactory condition for use, and was used and enjoyed by the plaintiffs, during the summers of 1969, 1970 and 1971. The major complaints relative thereto arose about two and one-half or three years after final installation.
The court agrees with the defendant that, arguendo, if any warranty is applicable in this case, it is the one-year express warranty and that any claims based thereon, when asserted in 1971 or 1972, were barred by the one-year limitation contained therein.
The plaintiffs themselves recognized the validity of the relevant limitation. When the plaintiff George Gulash wrote a letter to the defendant dated September 8, 1971, he referred to implied warranties. However, he expressly admitted: "I realize that the one year warranty on construction in the State of Connecticut has expired. . . ." Moreover, if the plaintiffs had not been persuaded that the one-year provision barred any further action for alleged defects, it is highly unlikely that they would have negotiated, pursuant to their letter of March 22, 1972, for additional repairs to be performed by the defendant and for which they agreed to pay an additional $300.
In an effort to circumvent the one-year warranty, the plaintiffs urge that it was not binding on them, since it was received by them some four months *Page 115 
following February 17, 1969, the date of execution of the contract. They cite § 42a-2-313 (1)(a) of the General Statutes. Perhaps a technical defect in the late delivery of the warranty might have been originally asserted. It is also true, however, that the plaintiffs waived that defect, because they admitted that the one-year warranty had binding force and effect, and that it was applicable to their dispute. The meaning of the terms of a contract, as shown by the conduct of the parties with respect to those terms, is a substantial factor in the interpretation of the contract. Taft Realty Corporation v. YorkhavenEnterprises, Inc., 146 Conn. 338, 343; Beach
v. Beach, 141 Conn. 583, 591.
The plaintiffs offered as an exhibit a new contract dated April 3, 1973, with A M Swimming Pool, Inc., of Seymour, for construction of an inground pool, for the total sum of $4500. It is significant that the A M contract contained a warranty that it would remedy any defect in workmanship of which it received notice within one year after connection of the filter, and placement of the coping. The plaintiffs were, in a real sense, thereby ratifying their original understanding and agreement that the only basic warranty which was applicable, by standard trade usage in pool installations, whether by the defendant or by any other contractor, was one year and no more.
At trial, the plaintiffs did not press any claims based on the express ten-year manufacturers' warranties of the filter and the liner.
 IV
As stated hereinabove, the plaintiffs' most vigorous argument is based on the implied warranty described in § 42a-2-314 of the General Statutes. That contention provokes a number of responses. *Page 116 
The initial pitfall is that, as pointed out in part II, the statutory warranties of the UCC are not applicable to this transaction.
Next, even if they had been applicable, the parties' actual negotiations, in the final disposition of their claims, including the $300 agreement for repairs in 1972, compel the conclusion that any implied warranty was finally excluded "by course of dealing or course of performance or usage of trade." General Statutes § 42a-2-316 (3)(c). See part III, supra. Section 42a-2-208 (1) of the General Statutes provides that "[w]here the contract ... involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement." For a pertinent case in which the court concluded that there was a limitation of implied warranties due to the course of performance or course of dealing, see Country Clubs, Inc. v. Allis-Chalmers Mfg. Co.,430 F.2d 1394, 1397 (6th Cir.).
Equally as important, there was no satisfactory proof that the defendant had in fact breached any warranties to the plaintiffs, whether express or implied. The plaintiffs themselves concede, in their brief, that they lacked direct evidence that the claimed defects they observed in 1971 and 1972 existed at the time of the original agreement in February, 1969. It is settled that to establish a breach of implied warranty of merchantability under § 42a-2-314, the plaintiffs must prove, inter alia, that the "goods" were not merchantable at the time of sale. White Summers, Uniform Commercial Code (1972), p. 286. That failure of proof, under § 42a-2-314, is a fatal defect in this case. *Page 117 
Commencing in 1971, the plaintiffs did encounter a number of difficulties in the use of the pool, which were vexing and frustrating. The defendant, however, cannot be charged with liability therefor. Those problems were, in the main, the result of the plaintiffs' own failure to paint and maintain the pool in the months following completion and acceptance.
 V
There remains for disposition the plaintiffs' claim for damages based on the oral contract for repairs, as described in the second count. As contained in a letter of the plaintiff George Gulash to the defendant dated March 22, 1972, for a consideration of $300 the defendant was to provide steel reinforced concrete footings, repair and/or replace portions of the deck and supporting structures, rake and reinforce the sand bottom, and replace the vinyl liner with a new liner. In other words, it is obvious that all of the plaintiffs' complaints about the pool, as of the spring of 1972, could have been adjusted by the completion of repairs in the comparatively minor sum of $300.
The plaintiffs paid $200 on account to the defendant in May, 1972. Disputes developed between the parties as to the speedy progress of the work and as to claims of defective workmanship. As previously noted, the pool was ultimately dismantled and junked in 1973 by A M Swimming Pool, Inc.
As the court understands it, the plaintiffs have attempted to claim, if recovery is allowed on the first count, $200, representing the return of their down payment as damages under the first count, or, if they should not prevail on the first count, a total of $2352.89 as a recovery on the second count.
The defendant contends that it completed all the repairs, except for installation of some wood on *Page 118 
the deck, which was a $40 item. The defendant claimed that it was willing and able to finish the $300 repair job but that the plaintiffs had prevented it from doing so. There was testimony that the plaintiff George Gulash stated that he was weary of the upkeep from an aboveground pool and that he was checking into the possibility of installing an inground pool.
The court is persuaded that the defendant substantially performed its obligations under the oral contract. Daly Sons v. New Haven Hotel Co.,91 Conn. 280, 291. If it is true that the defendant did not complete the $40 work item, the obstacle to final completion was unjustifiably interposed by the plaintiffs. It is concluded that the plaintiffs are not entitled to any recovery on the second count.
 VI
The plaintiffs have called the court's attention to the recent case of Johnson v. Flammia, 169 Conn. 491. The case sustained a claim for damages arising out of the installation of a swimming pool and was tried to a jury. The opinion of the Supreme Court in the Johnson case does not refer to the UCC as material to the trial or disposition of the case. In any event, nothing in the Johnson
case compels a conclusion contrary to the conclusions of this court hereinabove.
 VII
The trial of the present case was protracted and the testimony was in sharp conflict on many issues. The court finds that the more credible evidence supports the defendants' contentions.
 Judgment may enter for the defendants on both counts.