Frank **RIFFE** and House of Aluminum, Inc., **Appellants,**

v.

Mr. and Mrs. Thomas **BLACK, Appellees.**

Court of Appeals of Kentucky.

March 4, 1977.

Philip M. Owens, Stanton, for appellants.

Terence L. Moore, Blakely, Moore & Gettys, Covington, for appellees.

Before HAYES, HOWARD and WILHOIT, JJ.

HAYES, Judge.

Appellees, Mr. and Mrs. Thomas Black, brought suit in Boone Circuit Court to recover damages resulting from the installation of a pool at their home. The action was tried before a special commissioner who concluded that appellants, Frank Riffe and the House of Aluminum, Inc., had not only breached certain warranties, but also had been negligent in the installation of this pool. The commissioner recommended judgment against appellants. This recommendation was confirmed by the circuit judge and appellants were ordered to pay $4,324.63 plus interest to the appellees. This appeal, therefore, has been brought to contest the report of the special commissioner and the order entered confirming that report.

There is no transcript of the proceedings because the parties agreed to proceed without a reporter. The parties, however, stipulated that the findings of fact of the commissioner would be final. The following facts, therefore, are taken from the findings of fact made by the special commissioner. On March 12, 1972, Mr. and Mrs. Black agreed to purchase a pool from Mr. Frank Riffe, who is doing business as the House of Aluminum. Riffe also was to install the pool and he selected the location where the pool was installed. This pool was a product manufactured by Heldor Associates, Inc. The walls of the pool were prefabricated steel which were set into the excavation site. Sand was trowelled for the bottom of the pool and a vinyl liner was placed into this excavation. When the pool was filled, as directed by Riffe, a wrinkle developed in the bottom. Riffe agreed to reseat the liner but failed to do so.

In the fall of 1973, appellees were preparing the pool for the winter, they discovered a hole in the liner. This hole was located in the area of the wrinkle and allowed water to leak from the pool. After being informed of the hole, Mr. Riffe advised Mr. Black to remove the liner from the pool so that Mr. Riffe could fix it in the spring. Riffe, however, did not appear as he had stated. Fearing further defects in the lin-

er, Mr. Black took the liner to Riffe. Black then refused attempts by Riffe to repair the liner and the liner was sent to Heldor for inspection. The liner was returned as not defective and there was no proof that any product was defective.

Since the liner had been removed as requested by Riffe, the pool was subjected to greater pressure from the surrounding earth. The rains caused the steel panels to bow. Appellees attempted to ease this pressure by digging around the panels; however, many of the panels were damaged in this unsuccessful process. Riffe again offered to repair the pool at a substantial cost to appellees but this offer was refused. The continuing pressure totally destroyed the pool by 1975.

In addition to these findings of fact the special commissioner made the following finding as to the proximate cause of the destruction of the pool:

> Your Commissioner believes that the first hole in the liner developed as a result of the initial wrinkle in the bottom which appeared when Riffe first seated the liner in the excavation and filled the pool. All of the subsequent problems relate back to Riffe's failure to reseat the liner as he had promised to do. His failure to appear again on May 10, 1974, was the proximate cause of the further damage to the liner and the collapse of the metal panels, with the result that Black has nothing for his money but an ugly hole in his lawn and a few salvageable components of the swimming pool kit which are now useless to him.

Based upon these findings of fact, the commissioner arrived at the following conclusions of law:

(1) Appellants breached the implied warranty of merchantability as provided in KRS 355.2–314 because they did not install the pool in a workmanlike manner using suitable materials.

(2) Appellants also breached the warranty of fitness for a particular purpose under KRS 355.2–315 in the installation of this pool.

(3) Appellants were negligent in installing the pool and in failing to provide reasonable service to correct defects caused by their negligent installation.

Appellants contend that these conclusions of law are not supported by the facts. This court disagrees and affirms the decision of the lower court.

KRS 355.2–102 sets out the scope of the sales provisions of the commercial code. It provides in part that "unless the context otherwise requires, this article applies to transactions in *goods*." (Emphasis added). Furthermore, both KRS 355.2–314 and KRS 355.2–315 are generally concerned with goods and their fitness and merchantability. The commissioner in his findings stated that there was no proof of defective goods. There was, however, proof of defective services performed in relation to the goods. The warranty provisions of KRS 355.2–314 and KRS 355.2–315 apply to services when the sale is primarily one of goods and the services are necessary to insure that those goods are merchantable and fit for the ordinary purpose. In addition, the findings of the commissioner are sufficient to support the conclusion that these warranties were breached. A hole at the bottom of a pool caused by negligent installation renders that pool unfit for its ordinary purpose.

The examination of the facts which gave rise to the destruction of this pool, reveals a situation similar to that expressed in *Poor Richard's Almanac* in 1758, under the heading, "A Little Neglect May Breed Great Mischief". In that situation Benjamin Franklin discussed how the lack of a horseshoe nail eventually led to the downfall of a kingdom. The facts of the present case also reveal a situation where a little neglect did breed great mischief.

The commissioner found that the proximate cause of the destruction of this pool was the failure of appellants to reseat the liner after a wrinkle had developed when the pool was installed and their failure to repair the hole which developed later. Appellants, however, do not argue that this

finding of fact was clearly erroneous or an abuse of discretion as provided in CR 52.01. Instead, appellants contend that the conclusion that they were negligent is not supported by the facts. This argument is without merit since one of the facts found by the commissioner was that appellants' failure to make reasonable repairs was the proximate cause of the destruction of the pool. This fact alone is sufficient not only to sustain the commissioner's conclusion that appellants were negligent but also to affirm the judgment against appellants.

Judgment is affirmed.

All concur.