JOHN B. SHEEHAN ET UX. *v.* ANTHONY POOLS,
A DIVISION OF ANTHONY INDUSTRIES, INC.

[No. 394, September Term, 1981.]

*Decided February 3, 1982.*

The cause was argued before MOYLAN, MOORE and BISHOP, JJ.

*Walter J. Murphy, Jr.,* with whom were *Welch, Murphy & Welch* on the brief, for appellants.

*John J. O'Neill, Jr.,* with whom were *Ford & O'Neill* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this products liability case, the host at a private party in Montgomery County fell off the diving board of his swimming pool onto the concrete coping of the alcove from which the board projected. A suit by the host and his wife against the swimming pool company ended with a defendant's verdict after a three-day jury trial. The central question on appeal, among two other issues, is whether the trial court erred in refusing to instruct that inadvertent or careless use of the board was not a defense. We find reversible error and remand for a new trial.

I

In the spring of 1976, John B. Sheehan and his wife, appellants, contracted with Anthony Pools, a division of Anthony Industries, Inc., for the construction of a Grecian-type swimming pool, equipped with diving board, at their home in Rockville, Maryland. The pool was thereafter built and, on the evening of August 21, 1976, the Sheehans

invited a number of guests to their home. After a while, several guests and the host decided to have a swim. Mr. Sheehan had used the pool once before, but not the diving board. On this occasion, he took to the board but fell off the right side and landed on the concrete apron, sustaining severe injuries. The configuration of the pool, with the six-foot diving board, reproduced below, is typical of several Anthony Pool designs, the deep end of the pool curving around the diving board rather than being at a straight angle to it:

The Sheehans' declaration alleged negligence, breach of warranty and strict liability. Appellants took voluntary nonsuit on the negligence count which alleged that "the diving board was not properly provided with a non-skid surface and the shape of the coping in the area of the diving board was negligently designed." The case proceeded on the counts alleging strict liability ("the defendant sold . . . a defective pool and diving board which was unreasonably dangerous . . .") and breach of an express warranty (that the "diving board was protected by non-skid materials over its entire surface"), and "warranties implied in law."

Appellants' witnesses at trial included an individual who was permitted to testify as an expert "on the safe use of diving boards." [1] His conclusion was:

"That how it was being used with this pool with that five-foot aid used at the end of the deep end and not having the nonslip material leased out to the edges or rolled over slightly on the edges for the

---

1. In apparent recognition that the expert's qualifications were far from overwhelming, the court observed: "I will let him testify and I will have to explain about expert testimony in my instructions."

entire length of the board, that it was a hazardous board to have in the application like that."[2] [*sic*]

At the close of appellants' case, the court directed a verdict for the defendant on the count alleging breach of warranty, ruling that the contract negated any implied warranties. Before the case went to the jury on the strict liability count, the court rejected both appellee's requested instruction that contributory negligence was a defense and appellants' requested instruction that inadvertence in the use of the diving board by Mr. Sheehan was not a defense.

In its instructions on strict liability, the court stated that there were two distinct defects for the jury to consider: "Number one, that the diving board was defective because the non-skid material didn't extend over to the edge of the diving board, and secondly, that the pool was designed in the diving board area in a fashion so that it was defective."

In their appeal following the jury's verdict for the defendant on the strict liability count, the Sheehans assign three grounds of error: (1) That the court below should not have granted a directed verdict on the breach of warranty count; (2) that the court erred in refusing to grant an instruction that "inadvertence or mere negligence in the use by a consumer of a product is not a defense"; and (3) that appellants' counsel was improperly prevented in final argument from referring to an alleged characterization by the defendant of the diving board as "experimental."

II

The warranty allegedly breached, according to the Sheehans, was that the diving board was covered with non-skid materials. This was claimed to be express or, at all events, implied in law. The contract between the parties, entitled "Retail Installment Contract" contained a section captioned, "Guarantees and Warranties," which provided

---

2. We assume the expert witness' conclusion to be that the board's lacks of non-skid material and its position in the pool alcove were "hazardous."

*inter alia* that "non-pool structure items, including all pool equipment . . . carry a one-year warranty against defects in workmanship and materials." Beneath the section, in capital letters appeared the following disclaimer:

"THE EXPRESS WARRANTIES CONTAINED HEREIN ARE IN LIEU OF ANY OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING (WHERE PERMITTED BY LAW) ANY IMPLIED WARRANTY OF MER-CHANTABILITY OR FITNESS, AND OF ANY OTHER OBLIGATION OR LIABILITY, INCLUD-ING NEGLIGENCE ON THE PART OF ANTHONY . . . ."

In directing a verdict for Anthony on the warranty count, the court below stated: "The contract takes care of the warranty aspect of the case." [3]

The court appears to have overlooked the applicability *vel non* of the Maryland Uniform Commercial Code relating to exclusions of implied warranties. Md.Com.L. Code §§ 2-316 and 2-316.1 (1975 Repl. Vol.). While § 2-316 (2) permits generally the exclusion or modification of implied warranties of merchantability or fitness, § 2-316.1 (1) specifically provides that § 2-316 does not apply "to sales of consumer goods, as defined by § 9-109, services or both"; and § 2-316.1 (2) goes on to declare such exclusions "unenforce-able." That subsection reads as follows:

"(2) Any oral or written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of mer-chantability and fitness for a particular purpose or

---

**3.** The appellants' declaration alleges that Anthony Pools' literature, which induced Mr. Sheehan to purchase the diving board, stated that it was protected by non-skid materials over its entire surface. This "warranty" was breached, the declaration adds, because the board as supplied was not properly and completely covered with non-skid material. However, neither the contract of sale nor the literature in the record contains such language. The contract is silent as to the board and the literature states that non-skid material is molded into the board. The court may have been referring to this claimed "express warranty" when it said that the contract disclaimer takes care of the warranty count.

> to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable. However, the seller may recover from the manufacturer any damages resulting from breach of the implied warranty of merchantability or fitness for a particular purpose."

As Judge Wilner stated for this Court in *Maryland Independent Automobile Dealers Association, Inc. v. Administrator, Motor Vehicle Administration,* 41 Md. App. 7, 11, 394 A.2d 820 (1978), the above-quoted section "makes absolutely clear, without condition or equivocation, that any attempt by the seller . . . to modify or exclude implied warranties is unenforceable. As between seller and buyer, there are no 'ifs, ands, or buts'."

Attempting to support the trial court's ruling, Anthony Pools contends in its brief that subsection (2) "relates to a *seller* and not, as in this situation, a *manufacturer*." (Emphasis in original). What this overlooks is that the Code defines "seller" as used in §§ 2-314 through 2-318 to include the manufacturer, distributor, dealer, wholesaler or other middleman, or the retailer. § 2-314 (2). Here, Anthony Pools is a division of the corporate entity, Anthony Industries, Inc. Thus, the appellee is, in fact, both manufacturer and seller.

Finally, the swimming pool package purchased by the Sheehans constitutes "consumer goods" which are defined in § 9-109 as used or bought for use primarily for personal, family or household purposes. The definition is certainly broad enough to encompass a backyard swimming pool. *Donnelly v. Mustang Pools, Inc.,* 374 N.Y.S.2d 967 (1975) [4] (agreement for construction of swimming pool at residence a "consumer transaction" within meaning of a statute defining such transaction as one for personal, family or household purposes.) Because the implied warranties of mer-

---

4. As Judge McWilliams observed in *Telak v. Maszczenski,* 248 Md. 476, 479, 237 A.2d 434 (1968), "There was a time when swimming pools were appurtenances of the well-to-do. During the past 10 years, however, private residential pools have become both inexpensive and commonplace." We take judicial notice that in the 14 years since *Telak,* private residential pools have become as commonplace as multi-car garages.

chantability and fitness for purpose may not be disclaimed by a seller of consumer goods, the court erred in directing a verdict for the defendant.

## III

The doctrine of strict liability, an enlightened social policy, came into being in § 402A of the Restatement (Second) of Torts (1965)[5] and was adopted in Maryland in 1976. *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955. It subjects to liability one who sells a product in a defective condition and unreasonably dangerous to the user, if the product is used without substantial change. The defect can be of manufacture or design but "in some circumstances the question of whether a particular design is defective may depend upon a balancing of the utility of the design and other factors against the magnitude of that risk." *Id.* at 348.[6]

---

**5.** Section 402A is entitled, "Special Liability of Seller of Product for Physical Harm to User or Consumer" and reads as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

**6.** Appellants allude to this risk/utility analysis in their brief, contending that "the cost of extending non-skid covering on the board can hardly be balanced against the danger of slipping off a diving board." No mention of this point was made at trial. In any case, such balancing involves seven factors, as delineated by Dean John W. Wade in his article, *"On the Nature of Strict Tort Liability for Products,"* 44 Miss.L.J. 825, 837-8 (1973):

(1) The usefulness and desirability of the product — its utility to the user and to the public as a whole.

(2) The safety aspects of the product — the likelihood that it will cause injury, and the probable seriousness of the injury.

In the instant appeal, the defects alleged were in design: (a) that the diving board was defective because the non-skid material covering the board did not extend over the edges; and (b) that the pool and diving board area were defectively designed because a diver who slipped off the side of the board would fall on the concrete coping.

The trial court carefully instructed members of the jury that their inquiry "is directed not to the care that the manufacturer used in designing this particular pool and board, but your inquiry is rather directed to the pool and diving board itself." The court continued:

"In this case liability is based on the existence of a defect that makes a product unreasonably dangerous for its intended use. As to this requirement of unreasonably dangerous, the Court instructs you that the product must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who utilizes the product with the ordinary knowledge common to its characteristics.

"To satisfy the unreasonably dangerous requirement, the Plaintiff[s] in this case, Mr. and Mrs. Sheehan, must prove not only that the pool and/or the diving board were dangerous to a degree beyond

---

(3) The availability of a substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

These factors rationalize what most courts do in deciding design cases, although not all the factors are necessarily weighed nor is the risk/utility analysis denominated as such. *See* Cepeda v. Cumberland Engineering Co., Inc., 386 A.2d 816 (N.J.1978) and cases cited at 827.

that which Mr. Sheehan could expect, but further
that it would be considered dangerous to such a
degree by an ordinary consumer."

The instructions were silent, however, with reference to
the manner in which the injured plaintiff used the board and
the consequences thereof. Although, as indicated earlier, the
trial judge denied the request of Anthony Pools for an
instruction on contributory negligence — and properly so [7]
— he also declined Mr. Sheehan's requested instruction that
mere inadvertence on his part would not preclude recovery.
In closing argument, however, Anthony Pools' counsel was
permitted, over objection, to argue as follows:

"You must find that this defect proximately caused
the accident. The clear testimony here from Mr.
Weiner and using your common sense is that *if
someone steps on the board with about an inch of
their foot on it, they will fall off the side. That was
the proximate cause, the way the board was used,
not the design of the board.* I am not willing to
concede for a moment that there is anything defec-
tive about the board when you use the standards
which are customary in the industry and any gov-
ernmental regulations. Even if you feel there was,
I ask you to find that the proximate cause was *the
way Mr. Sheehan used it, not the way it was
designed.*

Mr. Kane, I think, added another element to this
as did Mrs. Christenat. *Mr. Kane said he saw the
witness taking his arms back.* That describes to me
what a witness does in a running event. *What he
did is he turned the corner, he got ready, and just
went right off the side, and no other design of this*

**7.** Ordinary contributory negligence is no bar to recovery in a strict
liability case. Khoder v. AMF, Inc., 539 F.2d 1078 (5th Cir. 1976). This case
involved an allegation of negligence in the plaintiff's assembly of a bicycle.
The court found error in an instruction that contributory negligence,
defined as lack of ordinary care, is a defense to a strict liability action.
*Contra,* Cyr v. B. Offen & Co., Inc., 501 F.2d 1145 (1st Cir. 1974), relying on
New Hampshire's refusal to adopt Comment n. to the Restatement (Second)
Torts, § 402A (1965).

*board would have prevented that unless perhaps a railing along the side of the board.*

He had a little discrepancy in his testimony. He at first said on direct that he didn't teeter. Then I read to him from his deposition where he said *he teetered,* and I asked him what that meant, and I said, did it mean this, and he just threw his arms up and went off.

Mrs. Christenat said that Mr. Sheehan *turned and talked to someone.* That isn't my testimony, it is their witness. She said he turned to talk to someone on the right of the pool. *That again shows that he wasn't looking where he was going."* (Emphasis added.)

We think there is substance to the Sheehans' claim that the jury was left without guidance on a point of critical importance, *i.e.,* the type of conduct on the part of the consumer in the use of the product which could or could not afford a valid defense to the seller; the prejudicial effect of this omission was compounded when Anthony Pools' counsel was permitted to argue contributory negligence on the part of Mr. Sheehan under the guise of proximate cause.

To begin with, Comment n. to § 402A explicitly states that the contributory negligence of the consumer is *not* a defense in strict liability cases

"*when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.* On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, *and commonly passes under the name of assumption of risk, is a defense under this Section* as in other cases of strict liability." (Emphasis added.)

Comment n. then concludes:

"If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds

unreasonably to make use of the product and is injured by it, *he is barred from recovery.*" (Emphasis added.)

The Restatement definition has been followed in numerous appellate opinions. In a leading case, *Cepeda v. Cumberland Engineering Co., Inc.,* 386 A.2d 816 (N.J.1978),[8] the court stated with respect to Comment n.:

"However, it is implicit in Comment n. and the generality of the cases that *only a limited range of a plaintiff's conduct — not contributory negligence in the sense of mere carelessness or inadvertence — can be a defense to an action for strict liability in tort for injuries sustained as the result of a product defect, particularly if the defect is one of unsafe design. See Bachner v. Pearson,* 479 P.2d 319, 329-330 (Alas.Sup.Ct.1970); *Kenner v. Dayton Electric Manufacturing Company,* 445 S.W.2d 362, 365 (Mo.Sup.Ct.1969); *Collins v. B.F.Goodrich Co.,* 558 F.2d 908, 911 (8 Cir.1977); *Williams v. Brown Manufacturing Company,* 45 Ill.2d 418, 261 N.E.2d 305 (Sup.Ct.1970). We agree with the statement in the latter case that acceptance of 'ordinary' contributory negligence as a defense in actions for strict liability in tort would be incompatible with the policy considerations which led to the adoption of strict tort liability in the first instance. 261 N.E.2d at 310. *The manufacturer's duty is imposed precisely to avert foreseeable inadvertent injury to a user of a product. Bexiga v. Havir Manufacturing Corp., supra,* 60 N.J. at 412,

---

**8.** *Cepeda* was overruled on a single ground, not here pertinent, in *Suter v. San Angelo Foundry & Machine Co.,* 406 A.2d 140 (N.J.1979), *but see, Ferrigno v. Eli Lilly & Co.,* 420 A.2d 1305 (N.J.Super.1980). In *Suter,* the Supreme Court of New Jersey adhered to a prior holding that, where an employee is injured in an industrial accident due to a defect in a machine being used for its intended or foreseeable purposes, contributory negligence is not a viable defense. 406 A.2d at 153. *Ferrigno* explains that only one aspect of § 402A has been rejected in New Jersey: "In *Suter, supra,* the Supreme Court rejected the 'unreasonably dangerous' qualification of defective conditions." 420 A.2d at 1317.

290 A.2d 281. Thus, in the case at bar, plaintiff's carelessness, if any, in getting his hand caught in the plastic strands is not a defense, and so much of the trial court charge on contributory negligence in the present case which could have been otherwise understood by the jury should not be repeated at the retrial." (Emphasis added.) [9]

*Id.* at 832.

In *Elder v. Crawley Book Machinery Co.,* 441 F.2d 771 (3d Cir. 1971), where the plaintiff sued in strict liability after losing two fingers in a bookmaking machine, the Court was called upon to determine whether the injured worker had assumed the risk. Affirming a judgment for the plaintiff, the Court stated:

"We conclude, therefore, that if the plaintiff's fingers became placed in a dangerous position in the machine by reason of inadvertence, momentary inattention or diversion of attention, that this would not amount to assumption of the risk.[10]

In the instant case, it is our view that while the trial court was eminently correct in rejecting the defendant's request

---

**9.** Refusal to instruct that contributory negligence is *not* a defense in strict liability required a reversal in *Young v. Up-Right Scaffolds, Inc.,* 637 F.2d 810 (D.C.C.1980). When the jury informed the judge that both sides were at fault, the judge told the jury to find for the defendant. "This was reversible error. The jury did not mention what kind of fault it had found on either side — and should have been told that negligence on the part of Young would not automatically bar his recovery." *Id.* at 814.

**10.** The conduct that may amount to assumption of the risk in strict liability actions is demonstrated in *Campbell v. Nordco Products,* 629 F.2d 1258 (7th Cir.1980), where the decedent knew both that operating a lift truck above 12 feet was unreasonably dangerous without stabilizing outriggers and that the limit switch installed to prevent such operation was broken. The court held that whether the decedent had assumed the risk was a jury question; judgment was rendered for the defendants. The court stated that the cognitive elements of this affirmative defense, *see* n.11, *infra,* are measured by a subjective standard, *i.e.,* did this plaintiff knowingly, voluntarily, and unreasonably encounter a known hazard. *Id.* at 1262. While this subjective state of the plaintiff's mind may be inferred from extrinsic circumstances, the standard is directly opposite to the objective standard found in contributory negligence — the reasonably prudent person. *See generally,* Noel, *Defective Products: Abnormal Use, Contributory Negligence, and Assumption of the Risk,* 25 Vand.L.Rev. 93, 95-105 (1972).

for a contributory negligence instruction, the matter should not have ended there. On the basis of the facts involved and of the Sheehans' specific request, an instruction should have been granted that Mr. Sheehan's inadvertent or careless use of the diving board and pool would not bar his recovery. On the other hand, giving such an instruction would also have required an appropriate instruction on assumption of risk, *i.e.,* that the defendant was entitled to prevail if Mr. Sheehan had discovered the defect, was aware of the danger, and then proceeded unreasonably to use the diving board and pool.

As stated in *Luque v. McLean,* 501 P.2d 1163, 1169 (Cal.1972):

"Ordinary contributory negligence does not bar recovery in a strict liability action. The only form of plaintiff's negligence that is a defense to strict liability is that which consists in voluntarily and unreasonably proceeding to encounter a known danger, more commonly referred to as assumption of risk. For such a defense to arise, the user or consumer must become aware of the defect and danger and still proceed unreasonably to make use of the product.' " [11]

Here, the trial court's silence on these two aspects of the plaintiff's conduct left the jury bereft of essential guidance and constituted reversible error.

---

11. Adoption of strict liability in tort has resulted in some semantic confusion with respect to contributory negligence. While ordinary contributory negligence is no defense, as it is in pure negligence actions, that type of plaintiff's conduct which constitutes assumption of the risk is a defense. The three subjective elements that the defendant must show are: 1) the plaintiff actually knew and appreciated the particular risk or danger created by the defect; 2) the plaintiff voluntarily encountered the risk while realizing the danger; and 3) the plaintiff's decision to encounter the known risk was unreasonable. Johnson v. Clark Equipment Co., 547 P.2d 132 (Ore. 1976). *See also,* McGoldrick v. Porter Cable Tools, 110 Cal.Rptr. 481 (Ct.App.1973) (Error in instruction on contributory negligence and assumption of the risk.) *See generally,* Frumer & Friedman, 2 *Products Liability,* § 16A[5][f], *Contributory Negligence; Assumption of Risk.*

"The somewhat comparable defense where breach of implied warranty is claimed is labeled abuse of product or misuse of product." Belfry v. Anthony

## IV

Finally, we consider the court's refusal to permit closing argument on the manufacture of the diving board. We observe that appellants failed during the course of the trial to link the diving board from which Mr. Sheehan fell with that described in appellee's manufacturing documents, admitted into evidence as "experimental." Therefore, appellants could not properly argue that the "defect" stemmed from the experimental nature of the board. There was no error.

> *Judgment reversed; cause remanded for a new trial in accordance with this opinion; costs to be paid by appellee.*

---

Pools, Inc., 262 N.W.2d 909 (Ct.App.Mich.1978). *Compare,* Westerman v. Sears, Roebuck & Co., 577 F.2d 873 (5th Cir.1978).