FANNIE A. CHLAN *v.* KDI SYLVAN POOLS, INC.

[No. 192, September Term, 1982.]

*Decided December 7, 1982.*

The cause was argued before MASON, WEANT and BISHOP, JJ.

*Howard J. Schulman* for appellant.

*Ronald B. Katz,* with whom were *Melvyn J. Weinstock, Sidney S. Friedman* and *Weinberger & Weinstock, P.A.* on the brief, for appellee.

WEANT, J., delivered the opinion of the Court.

After a torturous journey through the discovery and trial stages, Fannie A. Chlan, appellant, seeks relief on appeal from Judge Raine's decision, sitting without a jury, in the Circuit Court for Baltimore County. The trial judge determined, after subtracting a $600 deposit and crediting appellant's account with a $1510 setoff, that appellant was liable for the remaining balance of $8,390 for the installation of a residential in-ground swimming pool. Even though the pool was contracted for in May 1973 and built in 1974, it has never been filled with water or enjoyed. Convinced that the

concrete crater in her backyard, now seriously cracked, has little utility except as a possible fishing pond,[1] appellant contends the trial judge entertained hearsay evidence in reaching his decision and failed to recognize her rejection of the pool.

## I.

The crux of this case is when and why serious cracks appeared in the walls of the swimming pool. Appellant contends they resulted from structural deficiencies and poor workmanship in 1974 shortly after construction was completed. Appellee contends they emerged much later in time and stem from hydrostatic pressure which could have been alleviated had appellant filled the pool.

In preparing for trial, appellee hired an independent engineering firm, Penniman & Browne, Inc. (P&B) to test the strength of the pool's concrete. A field crew of P&B obtained core samples. Another P&B employee, Mr. Yingling, penned the test report although he did not inspect the pool or take the core samples. Ultimately, appellee attempted to introduce this report into evidence through the vice-president of P&B, Mr. Thompson, who had no personal knowledge of the pool or report. Appellant challenged the report and Thompson's testimony as hearsay. The trial judge admitted the report under the written business records exception to the hearsay rule, codified in Maryland as *Md. Code,* Courts and Judicial Proceedings Article § 10-101. Notwithstanding the trial judge's ruling that it was the "regular business" of P&B to prepare such reports, appellant maintains the report, prepared in anticipation of litigation, lacks the "indicia of reliability" and trustworthiness attributed to business records generally and therefore runs afoul of the spirit of C&JP § 10-101.

Certainly this argument is not without merit. Unfortunately, even were we to adopt appellant's position,

---

1. Mr. Sisk, a witness for appellee, testified that at one point the pool "had about three foot of water in it, fish and stuff like that." Although not qualified as a fishing expert, he later testified that the fish were bass.

such a ruling would not carry the day. Inasmuch as each side presented directly conflicting testimony as to when the cracks appeared, it was the function of the trier of fact to weigh and assess the credibility of each witness. Judge Raine, the trier of fact in this case, found appellee's witness, Mr. Sisk, to be credible and this Court must affirm that finding unless clearly erroneous. Md. Rule 1086. An appellate court is in a poor position to evaluate the plausibility of a witness established, in part, through demeanor evidence.

The trial judge articulated the reasons why he found Sisk's testimony to be reasonable. In January 1975 Mr. Chlan complained to Mr. Sisk about four or five problems which Sisk promptly undertook to resolve. One of those problems concerned a wall which was rough and in need of sanding. The judge reasoned that had cracks been present at that time, Mr. Chlan "would in no uncertain terms [have] emphasized the cracks in the wall, as opposed to a wall being rough and needing sanding." Moreover, in a letter to the bank which financed the pool, the Chlans alluded to a "failure of consideration" but never mentioned major cracks in the walls. Finally, the trial judge was suspicious of the lack of pictures revealing these alleged imperfections at the time they appeared as both Mr. and Mrs. Chlan were lawyers.[2] Thus, assuming *arguendo* that the P&B report was inadmissible, any prejudice resulting from its admission was offset by other evidence sufficient to support the judge's ruling. *Bethesda Salvage Co. v. Fireman's Fund Insurance Co.,* 111 A.2d 472 (1955).

## II.

In addressing the rejection issue both parties couched their arguments in Uniform Commercial Code (UCC) terminology, *e.g.,* rejection, perfect tender, and revocation of acceptance. Appellant's argument, in short, is that she was

---

2. The lack of pictures was not direct evidence of when the cracks appeared. The judge merely found their absence to be additional support for Sisk's testimony which he could have believed strictly on the basis of demeanor.

entitled to a perfect tender under § 2-601, *Md. Code,* Commercial Law Article, Title 2, Maryland Uniform Commercial Code (MUCC) — Sales. Because the judge awarded appellant setoff damages of $1510, it follows a *fortiori* that appellee's tender failed in some respect, justifying the rejection under § 2-601 (a) and terminating appellant's obligation to pay for the pool under § 2-602 (2) (c).

Title 2 of the MUCC applies solely to "transactions in *goods.*" § 2-102, emphasis added. Goods are those things *movable* at the time of identification to the contract. § 2-105 (1). Inasmuch as the swimming pool was a future good — it did not exist when the contract was signed — existence and identification to the contract are synonymous in this case. This pool made of concrete would be immobile once constructed. Thus, this in-ground swimming pool is not a "good" covered by Title 2 of the MUCC as goods are simultaneously movable and existing. *Helvey v. Wabash County REMC,* 278 N.E.2d 608 (1972). Hence, appellant is not entitled to demand "perfect tender" under § 2-601.

Our research reveals that at least three other jurisdictions have addressed the precise question of whether the UCC applies to constructed swimming pools. All three of these authorities have viewed the transaction as a mixed sales and service contract with inclusion or exclusion hinging on the main purpose of the agreement. Both Connecticut, *Gulash v. Stylarama, Inc.,* 33 Conn. Sup. 108, 364 A.2d 1221 (1975) and New York, *Ben Construction Corp. v. Venture,* 23 App. Div. 44, 257 N.Y.S.2d 988 (1965), have decided that in the particular circumstances, the service component predominated, with the sale of goods incidental to that main purpose.

Kentucky, however, in *Riffe v. Black,* 548 S.W.2d 175 (1977), viewed the agreement as primarily one for the sale of goods. The facts in *Riffe* are readily distinguishable from the facts in the instant case. In *Riffe,* once the hole was excavated, prefabricated steel walls were positioned and a vinyl liner was laid over the frame. In *Riffe,* it can fairly be said that an existing pool was set into the ground. In the instant case, however, the pool was constructed out of

cement. The pool had no existence until poured. The wet concrete could have been put to any number of purposes; the prefabricated steel shell in *Riffe* was necessarily a swimming pool in or out of the ground. We take further note that the instant agreement was designated "a contract for the *installation* of an Unipour pool." (Emphasis added.)

Appellant cites the recent opinion of this Court, *Sheehan v. Anthony Pools,* 50 Md. App. 614, 440 A.2d 1085 (1982), as support for the broad proposition that the MUCC applies to the sale of in-ground swimming pools. *Sheehan,* however, involved application of the warranty sections of the MUCC, specifically § 2-316.1. Nevertheless, § 2-316.1, in extinguishing the ability of sellers to exclude or modify consumer warranties, explicitly displaces the general Title 2 definition of goods in § 2-105 with a specific reference to ". . . consumer goods, as defined by § 9-109, services, or both." The present dispute involves the interplay of various sections of Title 2 *other than* § 2-316.1 and the § 2-105 definition of goods applies. Hence *Sheehan* is distinguishable.

The cases are legion in applying the doctrine of substantial performance to building contracts. The perfect tender rule in § 2-601 may be eminently fair in commercial transactions for goods, where if one party does not receive precisely what he bargained for, he may reject and return the goods, thereby restoring the status quo. However, a construction contract is an inherently different beast. In *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 112 A.2d 901 (1954), Judge Hammond, speaking for the Court of Appeals, explained the rationale:

> The hardship of the rule requiring strict performance when applied to a contractor who, in good faith, has substantially performed compared to the inequitable advantage that it gives to an owner who receives and retains the benefit of the contractor's labor and material, has led to a qualification that the contract price, less allowance to the owner for deviations, may be recovered. The question of whether there has been substantial compliance and

whether a deviation from contract requirements is wilful or justified, is ordinarily a question for the trier of facts. *Speed v. Bailey,* 153 Md. 655. [*Id.* at 621, 112 A.2d at 906.]

Judge Raine in the instant case, sitting as the trier of facts, specifically found that appellee had "substantially performed." He found that the Unipour characteristic went to the integrity of the pool's shell requiring that the *shell* be poured in one continuous session. The subsequent pouring of the subfloor on top of the Unipour shell did not undermine the pool's structural integrity. The trier of fact in the case simply did not believe that the non-Unipour nature of the subfloor, costing $810 for labor and materials, was a material or essential breach sufficient to justify rescinding the entire contract of $10,500. Moreover, he awarded appellant $810 to cover replacing the subfloor, if necessary, during the life of the pool.[3] We cannot say that the judge's findings were clearly erroneous. Md. Rule 1086.

We think the case below was tried and decided without reversible error.

> *Judgment affirmed.*
> *Costs to be paid by the appellant.*

---

3. In addition to the $810 damages, the judge awarded appellant $700 for pool equipment never delivered.