**BIG RIVERS ELECTRIC CORPORATION,**
Plaintiff,

v.

**GENERAL ELECTRIC COMPANY,**
Defendants.

No. EV 91–127–C.

United States District Court,
S.D. Indiana,
Evansville Division.

Nov. 10, 1992.

**1124**

Charles F. Robinson, Linda Y. Hammel, Yarling Robinson, Hammel & Lamb, Indianapolis, IN, for Big Rivers Elec. Corp.

Phillip R. Scaletta, Michael D. Marine, Ice, Miller, Donadio & Ryan, Indianapolis, IN, for General Elec. Co.

### MEMORANDUM [1]

BROOKS, Chief Judge.

This matter comes before the Court on General Electric's Motion for Summary Judgment on all Counts. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 since the sole plaintiff is a corporation organized in Kentucky with its principal place of business in Kentucky, the sole defendant is a corporation organized in New York with its principal place of business in New York, and the amount in controversy is in excess of $50,000.00.

### FACTS

Big Rivers is a public utility that purchased several transformers from General Electric. One of these transformers malfunctioned causing a discharge of oil onto the surrounding soil. Big Rivers claims damages to the transformer and the soil in a three count complaint. Other facts will be provided throughout this Memorandum as necessary to the analysis.

### COUNT ONE—STRICT LIABILITY [2]

General Electric argues that summary judgment should be granted on Count One because purely economic damages associated with an allegedly defective product are not recoverable in a strict liability action. Big Rivers answers that since its damages also include the oil sprayed soil surrounding the transformer, it may recover under strict liability for both the damage to the soil and the transformer. General Electric replies that damage to the soil does not permit recovery for damage to the transformer and that the transformer was not unreasonably dangerous to the soil.

*A. Choice of law.* "[A] district court whose jurisdiction is predicated on diversity of citizenship must apply the choice of law rules of the state in which it sits." *Hager v. Nat'l Union Elec.*, 854 F.2d 259 (7th Cir. 1988).

Strict liability is a tort doctrine, therefore, Indiana's choice of law rules for torts will be applied. Indiana uses a modified *lex loci delicti* rule.

"In a large number of cases, the place of the tort will be significant and the place with the most contacts. In such cases, the traditional rule serves well. A court should be allowed to evaluate other factors when the place of the tort is an insignificant contact. In those instances where the place of the tort bears little connection to

---

1. As an initial matter, Counsel for both parties are reminded that,

    If a party relies upon a legal decision not published in United States Reports, Supreme Court Reporter, the Federal Supplement, Federal Rules Decisions, Federal Reporter, Federal Reporter 2d, Bankruptcy Reporter, the United States Patents Quarterly, North Eastern Reporter 2d, or a statute or regulation not found in the current publication of the United States Code, the Code of Federal Regulations, the Indiana Code, or the Indiana Administrative Code, then *the party shall furnish the Court and all counsel of record with a copy of the relied-upon decision, statute, or regulation.*

    S.D.Ind.LR 7.1(b) (emphasis added). Though the Court was able to obtain copies of all of the necessary materials, the Court would appreciate future compliance with the local rules.

2. Though the parties have not segregated their consideration of Counts One and Two, they are discussed separately in this Memorandum because this Court finds that the applicable standards are different under the two theories.

the legal action, this Court will permit the consideration of other factors such as:

1) the place where the conduct causing the injury occurred;

2) the residence or place of business of the parties; and

3) the place where the relationship is centered.

These factors should be evaluated according to their relative importance to the particular issues being litigated."

*Hubbard Mfg. v. Greeson* (1987), Ind., 515 N.E.2d 1071, 1073–74 (citations omitted).

■ Following the example of *Hubbard,* "the first step in applying this rule in the present case is to consider whether the place of the tort 'bears little connection' to this legal action." *Hubbard* at 1074. The last event necessary to make General Electric liable for the alleged tort took place in Kentucky. Big Rivers is a Kentucky Corporation with its principal place of business in Kentucky. Big Rivers issued bid documents from the Kentucky for this transformer. The new transformer was shipped from the factory to Kentucky; it was installed and serviced in Kentucky where it remained until the time of this alleged tort. Finally, the alleged tort occurred in Kentucky. This Court cannot say that "the place of the tort is an insignificant contact" or that it "bears little connection to the legal action." Therefore, under Indiana Law with its modified *lex loci delicti* rule, the initial presumption that the place of the tort determines the choice of law is not overcome.

Nevertheless, even if it were, an application of the balancing test would still result in selecting Kentucky as the appropriate source of law for the tort claims in this case. General Electric is a New York Corporation with its principal place of business in New York. The transformer was manufactured and allegedly improperly inspected in Massachusetts. It is unknown where the transformer was allegedly improperly designed. The installation and service personnel for General Electric came from Indiana.

The place where the conduct causing the injury occurred was either in Massachusetts or Kentucky depending on whether the conduct was the manufacture, installation, or servicing of the transformer. The place of business of the parties is in Kentucky for Big Rivers—General Electric's principal place of business is in New York, but it does business in every State including Kentucky (and Massachusetts, where this transformer was manufactured.) The place where the relationship is centered is in Kentucky where the bids were taken, and where the equipment was delivered, installed, and serviced. When these factors are evaluated according to their relative importance to the particular issues being litigated, Kentucky is the appropriate source of law for the tort claims in this case.

After applying the *Hubbard* standards, this Court concludes that Kentucky is the appropriate source of law for the strict liability claim in Count One.

■ *B. Product Liability Act of Kentucky.* Though captioned "Strict Liability", the Product Liability Act of Kentucky applies to Big Rivers claim in Count One. "As used in KRS 411.310 to 411.340, a 'product liability action' shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." KRS 411.300(1).

Big Rivers argues that Kentucky would be influenced by Indiana's interpretation of its product liability act, and would interpret the Product Liability Act of Kentucky to permit recovery for a product's damage to itself. While it is unclear what influence Indiana's interpretation of its product liability act would have on Kentucky, it is clear from reading the Product Liability Act of Kentucky that it does not, and was not intended to, create a cause of action for product liability actions. Rather, as the Kentucky Supreme Court has recognized, "it was enacted 'to codify certain existing legal precedents and to establish certain guidelines which shall govern the rights of all participants in products liability litigation.'" *Ford Motor Co. v. Fulkerson,* 812 S.W.2d 119, 125 (Ky. 1991) quoting from the act's preamble 1978

Ky.Acts Ch. 91 (S.B. 119). Though KRS 411.320 appears in its title, "Circumstances under which defendant is liable", to create a cause of action, the title is not law because it is not a part of the 1978 Ky. Acts; further, the text addresses merely defenses to a product liability suit. The Products Liability Act of Kentucky does not create a cause of action. Rather it codifies some aspects of a common law products liability cause of action. Therefore, an examination of the Common Law of Kentucky is necessary.

■ *C. Kentucky Common Law.* "Since the time Kentucky adopted the doctrine of 'strict liability' in products cases as stated in the Restatement, Second, Torts, § 402A, in the case of *Dealer's Transport v. Battery Distributing,* Ky., 402 S.W.2d 441 (1966), the Kentucky practice has been to state the liability issue in the terms of Restatement: Did the defendant manufacture, sell or distribute the product 'in a defective condition unreasonably dangerous to the user ...?'" *Ford Motor Co. v. Fulkerson,* 812 S.W.2d 119, 122 (Ky.1991).

In *Falcon Coal v. Clark Equipment,* 802 S.W.2d 947 (Ky.App.1990), the court held that Kentucky law did not permit recovery based on strict liability where damages were limited to the product itself. Big Rivers argues that *Falcon Coal* was improperly decided and that *C & S Fuel v. Clark Equipment,* 524 F.Supp. 949 (E.D.Ky.1981) presents the "correct" interpretation of Kentucky law on this point. Despite Big Rivers "respectfully submitted" argument, the decision of the Kentucky Court of Appeals in *Falcon Coal* is binding authority and this Court is bound to enforce Kentucky law as Kentucky has interpreted it. To the extent that Big Rivers may be relying on *C.D. Herme, Inc. v. R.C. Tway, Co.,* 294 S.W.2d 534 (Ky.1956), it is distinguishable because *Herme* only deals with negligence, not strict liability.

Big Rivers argues that since its damages also include the oil sprayed soil surrounding the transformer, it may recover under strict liability for both the damage to the soil and the transformer. Big Rivers fails to cite any law directly in support of this theory. This Court declines to extend Kentucky law to include a product liability claim under strict liability for damages to the product giving rise to the strict liability action even though there is a cause of action for damages to other property damaged by the product. Therefore summary judgment will be granted on Count One to the extent that it seeks recovery for damage to the transformer.

■ General Electric argues that summary judgment should be granted on all of Count One and that Big Rivers claim for damage to the soil should also be denied. Nevertheless, there is a material issue of fact concerning the nature of the damaged soil. "The Coleman HV substation has a oil recovery pit surrounding the outer boundaries of the autotransformer." Affidavit of David Sandine at ¶ 5. Sandine's affidavit does not say that the damaged soil was a part of the recovery pit. "When the transformer failed, boiling oil sprayed from a pressure relief vent carrying oil over a large area of Big Rivers' property surrounding the transformer." Affidavit of J.E. Strehl at ¶ 7. Though this Court would conclude as a matter of law that the transformer was not unreasonably dangerous to soil in a recovery pit whose purpose was to collect oil discharged from the transformer, there is a material issue of fact concerning the nature of the damaged soil.

## COUNT TWO—NEGLIGENCE

General Electric argues that summary judgment should be granted on Count Two because purely economic damages associated with an allegedly defective product are not recoverable in a negligence action.

*A. Choice of law.* Negligence is a tort doctrine, therefore, Indiana's choice of law rules for torts will be applied. Based on the choice of law analysis under Count One applying *Hubbard Mfg. v. Greeson* (1987), Ind., 515 N.E.2d 1071, this Court concludes that Kentucky is the appropriate source of law for the negligence claim in Count Two.

*B. Product Liability Act of Kentucky.* Though captioned "Negligence", the Product Liability Act of Kentucky applies to Big Rivers claim in Count Two. As with Count One, the Products Liability Act of Kentucky does not create a cause of action. Rather it codi-

fies some aspects of a common law products liability cause of action. Therefore, an examination of the Common Law of Kentucky is necessary.

■ *C. Kentucky Common Law.* In *C.D. Herme, Inc. v. R.C. Tway, Co.,* 294 S.W.2d 534 (Ky.1956), Kentucky recognized a negligence claim where recovery was only obtainable for damage to the product itself. "The first time the semi-trailer was put in use the kingpin constituting the main connection between the semi-trailer and the tractor broke, causing the semi-trailer to come loose and upset in a ditch, with resulting damage of substantial nature to the semi-trailer and its cargo." *Herme* at 536. The plaintiff's claim for damage to the cargo was held to be subrogated to its insurer who had paid 100% of its damages, but plaintiff's insurance on the semi-trailer had a $500.00 deductible and therefore that claim survived along with the purely economic claim for the loss of the use of the trailer.

To the extent that General Electric may be relying on *Falcon Coal v. Clark Equipment,* 802 S.W.2d 947 (Ky.App.1990), it is distinguishable because *Falcon Coal* only deals with strict liability, not negligence. Further, the product liability negligence theory was not abolished when the doctrine of strict liability was adopted as evidenced by the Kentucky Supreme Court's recognition of both theories in *Williams v. Fulmer,* 695 S.W.2d 411 (Ky.1985). Therefore summary judgment will be denied on Count Two.

*COUNT THREE—BREACH OF CONTRACT*

General Electric argues that summary judgment should be granted on Count Three because the contract is predominately one for goods and UCC § 2–725 provides for a four year statute of limitation which expired November 1986.

*A. Choice of law.* The contract provides that it "shall be governed by the Laws of the Commonwealth of Kentucky." Contract No. 537, at 1–3 D. Therefore, Kentucky law will be applied to the breach of contract claim in Count Three.

■ *B. Kentucky's Uniform Commercial Code.* General Electric argues that "[w]here

a contract involves the sale of goods and an additional element of service, courts have tended to look to which of the two elements predominates to determine whether or not Article Two of the Uniform Commercial Code should apply." Brief in Support of Motion for Summary Judgment at 8–9.

Where a contract is for both goods and services, Kentucky has stated, "[t]he warranty provisions of KRS 355.2–314 and KRS 355.2–315 apply to services when the sale is primarily one of goods and the services are necessary to insure that those goods are merchantable and fit for the ordinary purpose." *Riffe v. Black,* 548 S.W.2d 175, 177 (Ky.App.1977). Though the parties have not directed this Court to any case where KRS 355.2–725 has been held to apply under these circumstances, Big Rivers has not argued that it would be unreasonable to apply this standard to § 2–725 nor that the service clauses of this contract were not necessary to insure that the transformers were merchantable and fit for their ordinary purpose. Therefore, this Court concludes that it is reasonable to apply KRS 355.2–725 to this breach of contract claim.

Big Rivers does argue that *Riffe* was erroneously decided and that the Kentucky Supreme Court would be persuaded by a contrary decision of the Court of Appeals of Indiana. Despite the universally persuasive authority of Indiana Court of Appeal's decisions, the decision of the Kentucky Court of Appeals in *Riffe* is binding authority and this Court is bound to enforce Kentucky law as Kentucky has interpreted it.

■ KRS 355.2–725 provides for a four year statute of limitations for breach of contract accruing from the date the breach occurs. The Complaint states, "[d]efendant breached the contract in that the transformer was defective, which defect originated during the manufacturing process and defendant failed to properly test in order to detect this failure." Complaint at ¶ 18. The transformer "was delivered and installed ... during the year 1984." Complaint at ¶ 4. Therefore the four year statute of limitations expired 31 December 1988 at the latest. "[A]t approximately 8:09 o'clock A.M. on Septem-

ber 2, 1989, the transformer failed …" Complaint at ¶ 6. Big Rivers breach of contract claim is barred by the statute of limitations, therefore summary judgment will be granted on Count Three.

### CONCLUSION

This matter having come before the Court on General Electric's Motion for Summary Judgment on all Counts, the Court reached the following conclusions: Kentucky law applies to all Counts; the Product Liability Act of Kentucky applies to Counts One and Two, but does not create a cause of action; the Product Liability Act of Kentucky codifies some aspects of a common law products liability cause of action; Kentucky law does not permit a product liability claim under strict liability for damages to the product giving rise to the strict liability action even though there is a cause of action for damages to other property damaged by the product; though as a matter of law the transformer was not unreasonably dangerous to soil in a recovery pit whose purpose was to collect oil discharged from the transformer, there is a material issue of fact concerning the nature of the damaged soil; Kentucky permits a product liability claim based on negligence for damages to the product itself; the product liability negligence theory was not abolished when the doctrine of strict liability was adopted; KRS 355.2–725 applies to this breach of contract claim; and Big Rivers claim arose after the statute of limitations expired. Therefore General Electric's Motion for Summary Judgment is granted on Count One to the extent that Count seeks recovery for damage to the transformer, and the Motion is denied to the extent that it seeks recovery for damage to the soil; the Motion is denied on Count Two, and granted on Count Three.

### ORDER

This matter having come before the Court on General Electric's Motion for Summary Judgment on all Counts, and the Court being duly advised and of the opinion that the motion should be granted in part and denied in part, it is

ORDERED that General Electric's Motion for Summary Judgment on Count One is GRANTED to the extent that it seeks recovery for damage to the transformer and DENIED to the extent that it seeks recovery for damage to the soil,

ORDERED that General Electric's Motion for Summary Judgment on Count Two is DENIED, and

ORDERED that General Electric's Motion for Summary Judgment on Count Three is GRANTED this 10th day of November 1992 in Evansville, Indiana.