## INLAND REFINING CO. v. LANGWORTHY.

No. 15485—Opinion Filed Oct. 13, 1925.

**1. Oil and Gas—Sale of Royalty Oil Produced by Lessee—Contract Construed.**

Where plaintiff and defendant enter into a written agreement to the effect that the party of the first part shall, and does, sell to the party of the second part, and the party of the second part purchases the royalty oil produced by the lessee under an oil and gas mining lease covering the land of the plaintiff and that the party of the second part will take charge of and look after the securing of said oil from the producers of the same and attend to the transportation thereof, and where the said instrument obviously refers to the production in the future of an uncertain amount of oil from an indeterminate supply, and where

the said instrument was subject to cancellation upon certain contingencies, such instrument will be construed to be a contract of sale rather than a present sale.

**2. Evidence—Parol Evidence of Additional Agreements to Written Sale of Royalty Interest in Oil Lease.**

Where the lessor of an oil and gas lease contracts in writing with a purchaser to sell her royalty interest therein for a certain percentage above the market price, and where, subsequent to the execution of the written instrument sued on, parol evidence of further negotiations and agreements is admitted, held, that such evidence is admissible when it appears that the same does not add to or vary the terms of the written contract, but consistently, with its terms, discloses the exact agreement of the parties.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by Florence Vance Langworthy against Inland Refining Company. From a judgment in favor of the plaintiff, defendant appeals. Affirmed.

Ramsey, de Meules & Martin, J. C. Denton, J. H. Crocker, and R. H. Wills, for plaintiff in error.

Hulette F. Aby, William F. Tucker, and Frank Settle, for defendant in error.

Opinion by PINKHAM, C. The defendant in error, Florence Vance Langworthy, as plaintiff, instituted this action against the Inland Refining Company, as defendant. The parties will be referred to as they appeared in the trial court.

The plaintiff was the owner of 160 acres of land located in Creek county, Okla. On the 10th day of April, 1912, she executed and delivered to one Paul Clinton an oil and gas lease covering said land. During the times involved herein the Gypsy Oil Company was the owner of said lease, and was in possession of the land covered thereby, and was operating the same for oil and gas purposes. The said lease provided, among other things:

"Should oil be found upon said premises in paying quantities, the party of the second part hereby agrees to and shall pay to the party of the first part, out of the proceeds of all oil produced and saved from said premises, the one-eighth part of said proceeds as royalty, but is under no obligation to find a purchaser for such oil."

On the 15th day of May, 1918, the plaintiff and defendant executed a written instru-

ment pertaining to the sale of the plaintiff's one-eighth of the oil. Under the provisions of this instrument, the plaintiff agreed to sell to the defendant, and the defendant agreed to purchase the royalty oil produced by the lessee under the oil and gas lease covering the plaintiff's land, or so much thereof as is delivered by the lessee to the defendant upon the following terms, considerations, and conditions: The defendant to furnish pipe line and tanks and transport through its own lines, at its own expense, the said oil, and to pay the plaintiff for each barrel of oil the market price as posted by the Prairie Oil & Gas Company for the Mid-Continent crude oil, plus a premium of 65 cents per barrel, such purchase and sale to cover the oil produced from the plaintiff's premises between the 15th day of May, 1918, to the 15th day of May, 1919.

It was further stipulated and agreed that the defendant would take charge of and look after the securing of said oil from the producers and parties in charge of said lease drilling thereon, and attend to the transportation thereof, and furnish semimonthly statements with checks in settlement in full thereof, without any cost to the plaintiff.

In plaintiff's original petition, she alleged that under the said contract the defendant, Inland Refining Company, became bound to purchase all of the oil belonging to the plaintiff, and to pay therefor at the rate of the market price as posted by the Prairie Oil & Gas Company for Mid-Continent crude oil, plus a premium of 65 cents per barrel, and further alleged that as the defendant wholly failed, neglected, and refused to take any part thereof, the defendant and certain persons who had executed a bond to the plaintiff in the sum of $10,-000, to insure the performance of the contract, were liable to the plaintiff for the difference between the amount which she was to receive under the said contract and the amount actually received therefor, together with interest, and prayed for judgment accordingly. Later, the plaintiff dismissed the case without prejudice in so far as the sureties on the bond were concerned. Subsequently, the plaintiff filed an amended petition, in which she alleged substantially all the matters and things set out in her original petition, and in addition thereto set out certain negotiations and agreements, which it is alleged were had and made between the 15th day of May, 1918, and the 15th day of May, 1919, between the plaintiff and defendant relative to the oil in question, and prayed for judgment as in her original petition.

In its second amended answer to the plaintiff's amended petition, the defendant denied all of the allegations in said amended petition, except such as were expressly admitted therein. It admitted that it executed and entered into the written instrument, a copy of which is attached to the amended petition, and alleged that at no time between the 15th day of May, 1918, and the 15th day of May, 1919, was the defendant the owner of the oil produced between said dates upon the premises involved herein; that the Gypsy Oil Company was the owner of said lease and was operating the same, and that under said lease the plaintiff was not entitled to any part of the oil produced upon said premises, but was only entitled to one-eighth of the proceeds of said oil; that the plaintiff had never delivered to the defendants any of the oil involved herein; that the Gypsy Oil Company had at all times refused to deliver to the defendant any part of the aforesaid oil; that the oral agreements set forth in plaintiff's amended petition were within the statute of frauds, and, further, that the cause of action is barred by the statutes of limitation.

Upon the issues thus joined, a trial was had by the court, a jury having been waived, and it was adjudged and decreed that the plaintiff was not entitled to recover for any oil produced between the 15th day of May, 1918, and the 21st day of October, 1918, from the premises involved herein, but she was entitled to recover for the oil produced between the 21st day of October, 1918, and the 15th day of May, 1919, and accordingly judgment was rendered in plaintiff's favor for the sum of $2,984.20, and costs of the action. Defendant's motion for a new trial was overruled and the cause comes regularly on appeal to this court by petition in error and case-made attached.

For reversal of the judgment, counsel for defendant, the Inland Refining Company, present and discuss in their brief a number of propositions. The first proposition is as follows:

"If the transaction evidenced by the written instrument sued on by the defendant in error constitutes a sale, as contradistinguished from a contract of sale, the same is and was absolutely null and void because the defendant in error had no title whatsoever to the subject-matter of such sale, and also because there was a mutual mistake as to ownership of said subject-matter."

The contention is that, as it appears from the royalty clause heretofore set out that the plaintiff was not entitled to any part of the oil produced from the said premises, but was only entitled to receive as a royalty on the oil produced an amount of money equal to one-eighth of the oil produced, the Gypsy Oil Company, the owner of the lease, was not a party to the aforesaid instrument upon which the plaintiff's action was instituted, and consequently was not bound thereby.

It is conceded by counsel for defendant that if the aforesaid instrument constitutes a contract of sale, as contradistinguished from a present sale, the said instrument would not be invalid simply because of the fact that the plaintiff did not own the oil involved at the time of the execution of the said instrument, but it is insisted that it is clearly established by the authorities that one cannot make a present sale of something he does not own, and it is argued that the question arises of whether the said instrument executed by the plaintiff and defendant constitutes a sale or a contract of sale.

In view of the history of this transaction, as disclosed by the record, we think there is no necessity of attempting to discuss the distinction between a contract of sale and a sale, further than to observe that the instrument in question executed by the parties which refers to the production in the future of an unascertained amount of oil, and which provides that the contract is subject to cancellation upon the happening of certain contingencies, is thereby stamped as a contract of sale rather than a present sale.

"The word 'sale' imports an actual transfer of title, and though it may be used to signify a mere contract to sell, yet in strictness it denotes only an actual transmission of property." Words & Phrases, vol. 7, page 6293.

In 23 R. C. L. 1187, it is said:

"A sale really consists of two separate and distinct elements; first, a contract of sale which is completed when the offer is made and accepted; and second, a delivery of the property which may precede, be accompanied by, or follow the payment of the price, as may have been agreed on between the parties."

The undisputed evidence clearly shows that the plaintiff, Mrs. Langworthy, was the lessor, and as such entitled to the one-eighth royalty from the production of oil on her property; that while the lease contained a clause making it doubtful whether she could compel delivery to her of oil in kind, or whether the lessee might elect to pay her for the royalty in money, still it is undisputed, and, we think, clearly shown that all of these circumstances were in the minds of the parties when they entered into the contract, and that as a part of the contract and contemporaneous thereto, the defendant was to and did make arrangements with the lessee satisfactory to all parties, by which the defendant was enabled to obtain the one-eighth oil produced on the property, and that said oil was actually run to the credit of defendant from the date of the contract, May 15th, until about August 13th, and that it was no fault of the plaintiff that the defendant did not actually take the oil. The contention that there was a mutual mistake between the parties to this transaction as to the ownership of the oil cannot be sustained. The evidence shows that there was a complete understanding between the parties, and that the defendant company, which dealt in oil and oil leases, fully understood what it was contracting to buy from the plaintiff; that it drew the instrument in question to suit itself and made arrangements for delivery of the oil to it to suit its convenience.

The record discloses that the president of the defendant company had made an arrangement with the Gypsy Oil Company, the owner of the lease, by which the royalty oil provided for in said contract, or its equivalent, would be delivered to the defendant, Inland Refining Company, from another lease owned by the Gypsy Oil Company, such arrangement being for the convenience of the Inland Refining Company, to which arrangement it consented and agreed and for the execution of which arrangement transfer orders were duly executed by the plaintiff and defendant, and delivered to the Gypsy Oil Company, and that the Gypsy Oil Company accepted such orders and acted in compliance therewith; that under that arrangement the oil in question was run to the credit of the defendant company until about August 13, 1918, during which period, from May 15th to about August 13th, the oil was at all times available to defendant, but defendant failed to take the same.

The evidence shows that defendant continuously promised plaintiff to take the oil and pay the premium as it agreed to do, and on or about August 13th, the defendant failing to take the oil, the Gypsy Oil Company ordered a discontinuance of such deliv-

ery to the Inland Refining Company, and about the same time advised the defendant that they would not further deliver the oil; that thereafter, the defendant still desired the contract to be kept in force and so advised the plaintiff.

It further appears that defendant then advised the plaintiff that the difficulty could be removed by the plaintiff giving the Gypsy Oil Company a certain gas contract, and requested that the plaintiff do so, and thereafter the plaintiff signed and delivered the desired gas contract to the Gypsy Oil Company, and then executed and delivered to the Gypsy Oil Company a new transfer order, by which that company was directed to deliver the royalty oil in question to the plaintiff in error, and the Gypsy Oil Company consented and agreed to do so.

The second proposition submitted by counsel for defendant in their brief is that, if the written instrument sued on evidenced a contract of sale, the same was void for the reason there was no consideration for the obligation of the defendant under said contract.

Many authorities are cited by counsel for defendant to the effect that a recital in a contract that each party has paid to the other $1 imports no consideration. We can readily agree with the proposition submitted; but we are clearly of the opinion that the record in this case discloses a sufficient consideration for the plaintiff's promise to deliver the oil in question to the defendant company.

Among the cases cited by defendant is Eastman Land & Investment Co. v. Long-Bell Lbr. Co., 30 Okla. 555, 120 Pac. 276, in which this court said in the body of the opinion:

"'Consideration is something done, forborne, or suffered, or promised to be done, forborne, or suffered by the promisee in respect to the promise.' (Anson on Contracts, par. 118)."

"'Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise. (Comp. Laws 1909, sec. 1075).'" (Section 5019, C. S. 1921.)

It cannot, we think, be seriously contended that the plaintiff forbore nothing, suffered nothing, nor promised to do, forbear, or suffer anything at all, when she signed the contract with the defendant company.

Under its third proposition it is urged by counsel for defendant in their brief that the trial court committed error in admitting evidence of negotiations and agreements subsequent to the execution of the written instrument sued on herein. The evidence concerning negotiations between the parties, both prior and subsequent to the execution of the contract, were not, we think, intended to, and do not, in any way vary the terms of the written contract, but rather explain the existing conditions and conduct of the parties.

The evidence as to the acts and things done by the parties subsequent to the execution of the contract were not introduced and received in evidence for the purpose of showing a change, addition, or modification of said instrument, but were introduced to show that the parties by their conduct and acts and agreements continually recognized the original contract of May 15, 1918, in force and effect and repeatedly ratified and reaffirmed the same.

Conceding that at the time the contract was entered into, there was sufficient question of the plaintiff's title and right to convey the oil as to justify the defendant company in rescinding the contract, still the evidence shows that the defendant knew all the facts and circumstances from the beginning of the contract and particularly knew it on August 13th, when the manager of the Gypsy Oil Company raised an objection to delivery of the oil; that at that time the defendant company thereafter continued the contract in force by advising the plaintiff that it would perform it, and advised the plaintiff to convey to the Gypsy Oil Company other valuable properties belonging to her, in order that the contract between plaintiff and defendant might continue in force without any objection on the part of the Gypsy Oil Company, as heretofore shown.

The record discloses that on October 21, 1918, the Gypsy Oil Company wrote a letter which was by Mr. Langworthy, husband of the plaintiff and acting for her, delivered to the defendant, Inland Refining Company, in which letter the defendant company was advised that the plaintiff had delivered to the Gypsy Oil Company her written election to run her one-eighth of the oil produced on the lease in question to the Inland Refining Company; that Mrs. Langworthy had

desired permanent consent of the Gypsy Oil Company to take her one-eighth royalty in oil instead of money; that the Gypsy Oil Company would not consent to that extent, but assured Mrs. Langworthy "that in the absence of greatly increased production, she could rely upon the fact that we will permit her to take her royalty in oil so long as it suits her convenience." Upon the delivery of this letter to the defendant company, the general manager of said company stated that it would proceed at once to take the oil. It is conceded that the defendant never took the oil or paid for any of it, and that the plaintiff sold the oil at the market price and lost the premium of 65 cents, as provided by the contract entered into by plaintiff and defendant.

As before stated, the trial court concluded from all the facts and circumstances in the case, that the plaintiff was not entitled to recover from the defendant company during the period from May 15, 1918, to October 21, 1918, but that she was entitled to recover from the defendant company on that portion of her claim from the time that the Gypsy Oil Company, the lessee, consented to the delivery of plaintiff's oil to the defendant company, to wit, October 21, 1918, to May 15, 1919, the date of the termination of the original contract between plaintiff and defendant.

We conclude that the trial court properly held the defendant company responsible for the agreed premium on the amount of oil run from October 21, 1918, until May 15, 1919, on the basis agreed upon in the contract between the parties.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 27 Cyc. p. 742 (Anno). (2) C. J. p. 1145, § 1531.