354 So.2d 1227 (1978)
Jay MALLIN, Appellant,
v.
The UNIVERSITY OF MIAMI, a Nonprofit Florida Corporation, Appellee.
No. 76-2293.
District Court of Appeal of Florida, Third District.
January 24, 1978.
*1228 Ellis Rubin and H. Lee Bauman, Miami, for appellant.
Mershon, Sawyer, Johnston, Dunwody & Cole and Robert Pondolfi, Miami, for appellee.
Before HENDRY and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PER CURIAM.
This appeal is by the plaintiff below from an adverse summary judgment.
On January 20, 1970 a written contract was entered into between the appellant Jay Mallin, an author referred to in the contract as the Proprietor, and the appellee University of Miami, referred to in the contract as the Press, for the publication, distribution and sale by Press of a work of the author entitled "General Giap on War: a Documentary Collection". Pertinent provisions of the contract included recital of delivery of the author's manuscript to Press and his assignment to Press of the exclusive publication rights thereto; for the author or Proprietor to receive from Press royalties of 10% on domestic sales of the published book by Press and royalties of 8% on its foreign sales; and an agreement by Press to publish the Work, and to supply ten published copies to the author free of charge. The provision in the contract by which Press agreed to publish and market the work, for a recited received consideration, was as follows:
"PUBLICATION AND SALE
"11. The PRESS further agrees to publish and market the WORK at its own expense, except as provided elsewhere in this agreement, in such style as the PRESS shall determine in accordance with its established practice and standards and in such manner (including title, price, date of publication, form and kind of advertising, and distribution of free copies) as it shall deem expedient, taking into consideration insofar as reasonable the wishes of the PROPRIETOR. It is mutually agreed that the PRESS shall have all proceeds from the sale of the WORK, except the percentages or royalties herein otherwise provided to be paid to the PROPRIETOR by the PRESS."
The contract contained a provision for termination of the agreement "after two years from the date of publication" if Press should not feel it could continue to advantage to sell the Work, in which event Press could terminate the agreement upon written notice to the Proprietor, following which the Proprietor could purchase from Press published copies of the Work then on hand or, if not so purchased, Press could dispose thereof at any price obtainable without payment of further royalties.
On January 15, 1976, prior to any publication of the Work having been made, Press sent a letter to the author advising him that Press was "no longer in a position to consider the publication of your book", and requesting that the author agree to a mutual termination of the contract.
Thereupon, on January 20, 1976, the author filed a complaint against Press for damages for breach of contract, attaching as exhibits copies of the contract and abovementioned letter and alleging the making of the contract and the failure of Press to perform thereunder, claiming damages for loss of royalties, and loss consequent on the delay and non-performance.
The defendant answered admitting the alleged contract and denying other allegations. As affirmative defenses, the answer averred the contract was unenforceable by being within the Statute of Frauds under Section 672.2-201, Florida Statutes (1975); and alternatively averring that the manuscript delivered to Press by the author was not an "acceptable manuscript" and was not in publishable form. The plaintiff filed a reply to the affirmative defenses, denying the averments thereof.
The defendant Press moved for summary judgment on the ground that the contract was unenforceable because it did not specify the quantity of books to be published and sold by the defendant; and that there was no agreement of the parties as to the number of volumes to be published and sold by the defendant.
*1229 In support of the motion, defendant filed affidavits of several directors of Press, stating that during the period involved they had not entered into any agreement with the author specifying the quantity of volumes of the Work to be published. Also, an affidavit of a director of Press stating that in contracts between an author and a publisher it is not customary or the usual practice to designate the number of books to be published pursuant to such a contract, and that he had never known of such a contract which did so.
In opposition to the motion for summary judgment the plaintiff filed his affidavit, stating he had been a party to more than six such publishing contracts in addition to the one involved here, and that in none of them had the number of books to be published been set forth; that it was not the custom or usual practice in the publishing industry for one agreeing to publish a book to designate the number of books to be published; and that the number of books which are published under such contracts is determined by "market conditions".
In granting summary judgment for the defendant, the court held there was no genuine issue as to any material fact, and that the Uniform Commercial Code was applicable.
On appeal, the plaintiff-appellant contends the trial court was in error in holding the Uniform Commercial Code (UCC) was applicable and operated to bar recovery, for the reason that the transaction involved here is not one to which the provision of the UCC, relied on by the court, relates. We agree with that contention of the appellant and reverse.
The section of the UCC invoked by the court, and relied on by the appellee, is Section 672.2-201(1), Florida Statutes (1975), which reads as follows:
"Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under the paragraph beyond the quantity of goods shown in such writing."
The UCC, at Section 672.2-102, Florida Statutes (1975) states:
"Unless the context otherwise requires, this chapter applies to transactions in goods; * * *"
Consistent with the latter, the above quoted Section 672.2-201(1) deals with the necessity for a writing in a "contract of sale". Thus that section provides that a "contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense" unless supported by such writing, with a further provision therein that such a contract (for the sale of goods) is not enforceable "beyond the quantity of goods shown in such writing".
That section of the UCC is inapplicable. There is no need for extensive discussion. This transaction did not involve a sale of goods by the publisher to the author. The publisher agreed to perform services. The only sales to be made were those which it was contemplated would be made by the sale of books when published, by the publisher to persons who would buy the books from it. Therefore the fact that the number of books to be published was not specified in the publication contract was not material, and furnished no basis to hold that the contract was unenforceable. We agree with the conclusion of the trial court that there was no genuine issue of material fact. However, for the defendant publisher to be entitled to a summary judgment it was necessary, in addition, that it be made to appear on the record that the defendant was entitled to judgment as a matter of law. Fla.R.Civ.P. 1.510(c). Here the contract declared upon was not one within the Statute of Frauds or otherwise rendered unenforceable under Section 672.2-201, Florida Statutes (1975). The holding of the trial court to the contrary, and therefore *1230 that the defendant was entitled to judgment as a matter of law, was incorrect.
The appellee argues that even if the UCC does not apply and the contract should be considered valid and enforceable there could be no determinable damages. With regard to the question of damages, if any, we express no opinion.
Accordingly, the summary judgment is reversed, and the cause is remanded for further proceedings.