**GILBERT CENTRAL CORP., a Corporation, Plaintiff,**

v.

**STATE of Oklahoma, the Oklahoma Department of Transportation and R.A. Ward, as its Director and Chief Operating Officer, Defendants.**

No. 61521.

Supreme Court of Oklahoma.

March 25, 1986.

As Corrected March 27, 1986.

James C. Chandler, Donald K. Funnell, Legal Intern, Lytle, Soule, Curlee, Harrington, Chandler & Van Dyke, Oklahoma City, for plaintiff.

Norman N. Hill, Gen. Counsel, Oklahoma Dept. of Transp., Oklahoma City, for defendant, Oklahoma Dept. of Transp.

Michael C. Turpen, Atty. Gen., James B. Franks, Deputy Chief, Civil Div., John D. Rothman, Asst. Atty. Gen., Oklahoma City, for defendant State of Okl.

LAVENDER, Justice:

Pursuant to the Certification Order and as a part thereof, the following statement of facts describing the nature of this controversy is provided for consideration to the Oklahoma Supreme Court:

"The defendant Oklahoma Department of Transportation in reliance on 51 O.S. 1981, § 24.3 and Oklahoma Attorney General's Opinion No. 83–144, in August, 1933 advised that plaintiff could not continue work under an existing construction contract, could not be awarded a highway construction contract as to which plaintiff was low bidder, and that plaintiff would no longer be allowed to bid on future Oklahoma highway construction projects. By an agreed Order in this action, thereafter plaintiff was allowed to resume doing business with defendants until further Order of the court.

Plaintiff is a Delaware corporation, duly domesticated in Oklahoma. Plaintiff has no felony convictions, or pleas to felonies, in Oklahoma or elsewhere. Likewise none of plaintiff's directors, officers or management employees have any such felony convictions or pleas.

All shares of plaintiff's stock are owned by Gilbert Constructors, Inc., a corporation which has no felony convictions or felony pleas anywhere. All shares of Gilbert Constructors, Inc., stock are owned by Kiewit U.S. Co., a corporation which has no felony convictions or felony pleas anywhere. Kiewit U.S. Co. also owns all shares of stock in Peter Kiewit Sons' Co., a corporation, which has had such a plea, but outside the State of Oklahoma. All shares of Kiewit U.S. Co. stock are owned by Peter Kiewit Sons', Inc., a corporation, which has no felony convictions or felony pleas anywhere. Peter Kiewit Sons', Inc. also owned all shares of the stock of Prairie States Construction Co. at the time it had such a conviction, which was outside the State of Oklahoma, and also owns all shares of the stock of the following corporations who have had such a conviction or plea, but outside the State of Okla-

homa: Missouri Valley Construction Co., and Big Horn Construction Company, d/b/a Highway Construction Company.

The contracts in question here cover Oklahoma highway construction projects, under which the contractor is obligated to furnish all tools, equipment, materials and labor, and to build and complete the project.

The statute in question, 51 O.S. 1981, § 24.3 was enacted during the First Extraordinary Session of the Thirty-Eighth Legislature of Oklahoma, which convened August 31, 1981 and adjourned September 4, 1981, in response to Executive Order 81–3 dated September 4, 1981, made by the Honorable George Nigh, Governor of the State of Oklahoma."

The determination of all of the certified questions revolve around established rules of statutory construction.

The paramount inquiry is legislative intent, to be ascertained, if possible, from the act itself.

In *State ex. rel. Cartwright v. Georgia-Pacific*,[1] we said (722):

"The ascertainment of legislative intent is the cardinal rule of statutory construction; and in the absence of a contrary definition of the common words used in a legislative act, we must assume that the law-making authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance." (Citation omitted).

■ There is no room for construction or provision for further inquiry when the Legislature plainly expresses its intent.[2]

■ In determining the meaning of an unabiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result.[3]

■ Where there are two possible interpretations in the construction of a statute, one of which would render the statute unconstitutional, the Court should adopt the construction which upholds the statute, unless the repugnacy to the constitution is shown beyond a reasonable doubt.[4] This court is bound to accept an interpretation that avoids constitutional doubt as to the validity of the provision.[5]

The statute which we are called upon to construe is 51 O.S. 1981, § 24.3 which provides:

"No person, firm or corporation who is convicted of or pleads guilty to a felony involving fraud, bribery, corruption or sales to the state or to any of its political subdivisions may make sale of real or personal property to the state or any political subdivision thereof."

### CERTIFIED QUESTION NO. 1 ANSWERED

■ "1. Do the provisions of 51 O.S. 1981, § 24.3 apply to a person, firm or corporation who is convicted of or pleaded guilty or nolo contendere to a felony involving fraud, bribery or corruption where such felony does not involve sales to the State of Oklahoma or any of its political subdivisions?"

We answer in the affirmative.

The question as formulated simply calls for the application of ordinary rules of grammatical construction. Reduced to its essence for the purpose of this inquiry, the statute prohibits sales to the state or any political subdivision thereof by a felon whose crime is one involving fraud, bribery, corruption or sales to the state or any of its political subdivisions ..." The word "involving" is a verb transative followed by a series of nouns, "fraud, bribery, corrup-

---

1. Okl., 663 P.2d 718 (1983).

2. *Hughes Drilling Co. v. Morgan,* Okl., 648 P.2d 32 (1982).

3. *Smith v. Broken Arrow Public Schools,* Okl. App., 665 P.2d 858 (1983).

4. *Oklahoma State Election Bd. v. Coats,* Okl., 610 P.2d 776, 780 (1980); *Kimery v. Public Service Co. of Oklahoma,* Okl., 622 P.2d 1066, 1069 (1981).

5. *State ex rel. Dept. of Transportation v. Pile* Okl., 603 P.2d 337 (343) (1979), Cert. Denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004.

tion or sales." The word "or" is a conjunctive used as the equivalent of or substitute for the nouns which precede it, thus placing "sales" in the same class or category as "fraud," "bribery," and "corruption," so that one standing convicted of a felony involving "sales" is debared in the same manner and to the same extent as if his crime involved fraud, bribery or corruption. To treat the word "or" as indicating an alternative (such as in sink or swim), the nouns preceding the word "sales" would require that "or" be preceded by a comma to separate the series of nouns from the noun "sales."

### CERTIFIED QUESTION NO. 2 ANSWERED

"2. Do the provisions of 51 O.S. 1981, § 24.3 apply to a person, firm or corporation who has been convicted of or pleaded guilty or nolo contendere to any of the types of felonies designated therein prior to September 8, 1981, the date upon which 51 O.S. 1981, § 24.3 became effective?"

We answer in the affirmative.

The question as propounded suggests a determination of whether the statute is a bill of attainder or ex post facto law in violation of Art. 2, § 15 of the Oklahoma Constitution.[6] In addressing this issue, an analysis of the nature and purpose of the statute is useful.

■ The purpose of the statute is manifest by its own provisions. The Legislature established qualifications for those doing business with the state or any of its political subdivisions by debarring certain felons from making sales of real or personal property to the state or to any of its political subdivisions. It is not, nor does it purport to be, penal, nor does it seek to

impose penalty or punishment upon those debarred.

In *Perkins v. Lukens Steel Co.,*[7] the United States Supreme Court said at 60 S.Ct. 876:

"Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." (And at p. 879), "Legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts."

In the case of *Board of Regents v. Updegraff,*[8] this Court said at 137:

"Inasmuch as the authority of the Legislature extends to all rightful subjects of legislation, it is not only the duty of the Legislature but it has the power to protect the general welfare of the people of the State by the exercise of the police power against subversive influences. The act in question (requiring loyalty oath as condition for employment by the state) constitutes an exercise of the police power by the Legislature. Such acts are valid so long as they are not unreasonable, arbitrary, and capricious and do not violate any of the fundamental constitutional guaranties of the State and Federal Constitutions. We recently said in the case of *Palmer Oil Corp. v. Phillips Petroleum Co.,* Okl.Supp. [204 Okl. 543] 231 P.2d 997, 999, "The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they may be said to be

6. Art. 2, § 15, Constitution of the State of Oklahoma provides:
"No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties."

7. 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

8. 205 Okl. 301, 237 P.2d 131 (1951) Reversed on other grounds, *Wieman v. Updegraff,* 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed.2d 216 (1952).

arbitrary, capricious and unreasonable, and hence irreconcilable with the conception of due process of law. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are ordinary matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance."

The Illinois Appellate Court said in construing an Illinois statute debarring persons convicted of bribing a state official from being awarded a state contract [9], (44 Ill.Dec. at 350, 411 N.E.2d at 319): "In the present case, the Legislature clearly chose not to deal with corporations like plaintiff. Absent any constitutional restriction, that decision is unreviewable by us."

■ With the foregoing in mind, we turn to the precise question of whether the statute is a bill of attainder or an ex post facto law, and conclude that the statute is neither.

In a case similar to the one at bar, the Supreme Court of Illinois had before it the construction of an Illinois statute which debarred a person or business which had been involved in the bribery of a state official or employee from being awarded a contract with the state, where the bribery conviction preceded the effective date of the debarring statute. In *Polyvend, Inc. v. Puckorius*, [10] the Court said in determining that the Illinois statute was not retroactive, was not a bill of attainder, and was not an ex post facto law:

"First of all, section 10.1 was not, in our judgment, applied retroactively to plaintiff. The Act became effective on October 1, 1977, and was applied prospectively to future procurement decisions. While the law did take cognizance of past acts, it did not effect procurement decisions occurring prior to October 1, 1977. Secondly, section 4 of the statutory construction act only protects 'vested rights.' [*Orlicki v. McCarthy*, (1954), 4 Ill.2d 342, 346, 122 N.E.2d 513.] As we concluded in the context of plaintiff's procedural due process argument, plaintiff does not have a vested right to future government supply contracts. Absent such an interest, plaintiff's argument that the statute violates section 4 of the statutory construction act fails.

"Finally, plaintiff contends that section 10.1 is an unconstitutional bill of attainder. A bill of attainder has been defined as 'a legislative act which inflicts punishment without a judicial trial.' [*United States v. Lovett*, (1946), 328 U.S. 303, 315, 90 L.Ed. 1252, 1259, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252.] We do not think that section 10.1 of the Illinois Purchasing Act can be called a bill of attainder. There clearly was a judicial determination of guilt concerning a controlling shareholder and official of the corporation when Stoltz was convicted of bribery in 1974. The legislative act, section 10.1 simply attributed his guilt to the corporation. This is no different than any other civil or criminal provision which holds a corporation responsible for the acts of its officials. The only way a corporation can act is through its officers, directors and employees.

"A similar problem was addressed by the United States Supreme Court in *DeVeau v. Braisted* (1960), 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109. In that case union officials and other challenged the constitutionality of a section of the New York Waterfront Commission Act which provided that no person could solicit or receive dues on behalf of any waterfront union if an officer of such union had been convicted of a felony. As a result of the Act, the International Longshoremen's Association was denied dues solicitation and collection

**9.** *Polyvend, Inc. v. Puckorius*, 88 Ill.App.3d 778, 44 Ill.Dec. 347, 411 N.E.2d 316 (1980). Accord, 51 Am Jur 2d Licenses and Permits, § 47; 64 Am Jur 2d Public Works and Contracts, § 55.

**10.** 77 Ill.2d 287, 32 Ill.Dec. 872, 395 N.E.2d 1376, 7 A.L.R.4th 1185 (1979), app. dismd. 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744.

privileges because of an officer's conviction of a felony 36 years earlier. The court, considering the claim that the Act was unconstitutional as a bill of attainder and as an ex post facto law, stated:

" 'Finally, § 8 of the Waterfront Commission Act is neither a bill of attainder nor an ex post facto law. ... Clearly, § 8 embodies no further implications of appellant's guilt than are contained in his 1920 judicial conviction; ... The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, *is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation* ... The proof is overwhelming that New York sought not to punish ex-felons, but to devise what was felt to be a much-needed scheme of regulation of the waterfront ...' (Emphasis added.) [363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109, 1120.)"

We likewise hold that 51 O.S. 1981, § 24.3 is neither a bill of attainder, nor an ex post facto law.

We express no view as to whether the plaintiff contractor in the case at bar has a "vested right," a "secured interest," or a "property interest in a benefit" which is within the protection of the Fourteenth Amended of the United States Constitution, since such issue is beyond the scope of the certified questions.

## CERTIFIED QUESTION NO. 3 ANSWERED

"3. May the provisions of 51 O.S. 1981, § 24.3 apply to an individual, firm or corporation which has not itself been convicted of any felony, where the statute is applied solely on account of past or present association with individuals, firms or corporations who have been convicted of or pleaded guilty or nolo contendere to a felony designated in that statute?"

The lineal corporate structure as it relates to Question No. 3 is as follows:

Peter Kiewit Sons', Inc.

* Felony conviction outside of Oklahoma

We deem the question as propounded to be one of statutory construction in connection with the implementation of legislative intent. Thus viewed, the question becomes one of whether the plaintiff is a "corporation who is convicted of or pleads guilty to a felony involving fraud, bribery, corruption or sales to the state ..." within the

meaning of 51 O.S. 1981, § 24.3 in *AMF Tubescope Company v. Hatchel,* [11] we said (379):

"Legislative intent will be presumed to have been for benefit of those affected, and not to their injury. The Legislature will not be presumed to have intended an absurd result, and a statute should be given a sensible construction, *bearing in mind the evils intended to be avoided or the remedy afforded."* (Citation omitted.) (Emphasis added.)

■ Here the benefit was to the State, and concomitantly to the people of the state and their welfare, as determined by the Legislature. The evil intended to be avoided and the remedy afforded is to debar those who do not possess minimal standards of integrity, honesty and fair dealing from making sales to the State or any of its political subdivisions.

■ No issue is here presented which calls for application of established law of principal-agent, master-servant, of "piercing the corporate veil," or of post facto use of a corporate device to perpetrate a fraud or an evasion of the application of the statute. The issue presented is one of pure law. The amalgam which anneals the plaintiff corporation to those corporations which have been determined guilty of a felony involving fraud, bribery, corruption or sales to the state is the sole and total ownership of those corporations by Peter Kiewit Sons', Inc., either directly or through wholly owned subsidiary corporations. To hold that only the felon corporations are debarred, while the corporations which have not been convicted of felony, but which are within the same lineal chain of sole ownership tracing back to the corporation owning the entire lineage, would fly in the face of the clear purpose of the Legislature, and would thwart the evils intended to be avoided by the statute.

11. Okl., 547 P.2d 374 (1976).

12. *Riffe Petroleum Co. v. Great National Corp., Inc.,* Okl., 614 P.2d 576, 579 (1980); *State ex rel. Western State Hospital v. Stoner,* Okl., 614 P.2d 59, 63 (1980).

We therefore hold that within the parameters of the given facts as applied to the question propounded, the plaintiff is a person or corporation who is convicted of a felony within the meaning of 51 O.S. 1981, § 24.3.

### CERTIFIED QUESTION NO. 4 ANSWERED

■ "4. Is an individual, firm or corporation to whom the provisions of 51 O.S. 1981, § 24.3 apply, prohibited by said statute from thereafter entering into or performing a highway construction contract with the State of Oklahoma or any of its political subdivisions to furnish all tools, equipment, materials and labor necessary to build and complete a highway project?"

The question as propounded raises the issue of whether a highway construction contract constitutes a "sale of real or personal property to the state ..." within the meaning of 51 O.S. 1981, § 24.3. We answer in the negative.

In the absence of a contrary definition of the common words used in the act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance.[12]

A "sale" is defined as a contract between two parties, called, respectively, the "seller" (or "vendor") and the "buyer" (or purchaser), by which the former, in consideration of the payment or promise of payment of a certain price in money, transfers to the latter the title and the possession of property. Transfer of property for consideration either in money or its equivalent.[13]

Where a transaction has the attributes of a "sale," but is a mixed transaction, calling for both the transfer of an interest in property and the furnishing of work, labor and services, whether the transaction constitutes a "sale" or a contract for work, labor

13. Black's Law Dictionary, 5th ed 1200; *Inland Refining Co. v. Langworthy,* 112 Okl. 280, 240 P. 627, 629 (1925).

and materials depends on whether the predominent thrust of the contract was the furnishing of work, labor and services, or the transfer of an interest in the property.

In *McCool v. Hoover Equipment Company,* [14] this Court had before it, the issue of whether damages for breach of warranty was applicable for breach of a contract whereby defendant contracted to chrome plate defendant's crankshafts for a prescribed sum, and the chroming proved to be defective. We said at 957:

> "The defendant cites the 4th and 5th syllabus from the case of *William H. Wise & Company, Inc. v. Rand-McNally and Company,* 195 F.Supp. 621 [S.D. N.Y. 1961], as follows:
>
> > " 'A "sale" is generally a transfer of interest in property, but not every transfer of personal property constitutes a sale.
> >
> > " 'Where service predominates and transfer of personal property is only incidental to transaction, it is "contract for work, labor and materials" and not a sale.'
>
> "Under the facts in the instant case, we conclude that the above authority is applicable to the transaction between plaintiff and defendant and thus, the dealings between these parties constituted a contract for work and labor and not one of sale."

In *Care Display, Inc. v. Diddle-Glaser, Inc.,* [15] a display designer brought suit for breach of an oral contract to construct a trade show display for a manufacturer. The Kansas Supreme Court affirmed the lower court determination that a contract existed. The display designer urged that the contract was within the Kansas statute of frauds requiring that a "sale of goods for the price of $500.00 or more is not enforceable" unless in writing. The Court said at 605:

> "The contract in question is one commonly referred to, by writers on the Uniform Commercial Code, as a 'mixed contract' in that it contemplated furnishing both goods and services. The test to determine whether a mixed contract is one for the sale of goods within the statute or one for services outside the statute is stated in *Bonebrake v. Cox,* 499 F.2d 951 (8th Cir., 1974).
>
> "The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominent factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom.)" At page 960.
>
> " * * *
>
> "In the instant case, there is no doubt that the contract contemplated the production and installation at Chicago of certain "goods." But was that the predominent thrust of the contract? We think not."

The test enunciated in *Bonebrake* has been applied by the courts on many occasions in determining that a contruction contract is a contract for the rendition of services, a work, labor and materials contract, rather than a contract for sale of goods within the meaning of the Uniform Commercial Code,[16] and we find those cases persuasive here.

---

14. Okl., 415 P.2d 954 (1966).

15. 225 Kan. 232, 589 P.2d 599 (1979).

16. *Christiansen Bros., Inc. v. State,* 90 Wash.2d 872, 586 P.2d 840 (1978); *Schenectady Steel Co. v. Bruno Trimpoli General Constr. Co.,* 43 App. Div.2d 234, 350 N.Y.S.2d 920, affd. 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875; *Gulash v. Stylarama, Inc.,* 33 Conn.Supp. 108, 364 A.2d 1221; *Milau Associates, Inc. v. North Ave. Development Corp.,* 42 N.Y.2d 482, 398 N.Y.S.2d 882, 368 N.E.2d 1247 (1977); *Lincoln Pulp & Paper Co. v. Dravo Corp.,* (D.C.Me.1977) 436 F.Supp. 262; *Mallin v. University of Miami,* (Fla.App. 1978) 354 So.2d 1227; *Freeman v. Shannon Constr., Inc.,* (Tex.Civ.App.1977) 560 S.W.2d 732; *Allied Industrial Service Corp. v. Kasle Iron & Metals, Inc.,* 62 Ohio App.2d 144, 16 Ohio Ops.3d 303, 405 N.E.2d 307, 29 UCCRS 439; *Executive Centers of America, Inc. v. Bannon,* 62 Ill.App.3d 738, 19 Ill.Dec. 700, 379 N.E.2d 364 (1978); *Northern Farm Supply, Inc. v. Sprecher,* (S.D. 1981) 307 N.W.2d 870; *Althoff Industries, Inc. v.*

**664**

The clear, unequivocal and unambiguous language of 51 O.S. 1981, § 24.3 is to prohibit certain felons from making "sale of real or personal property to the state or any political subdivision thereof." There being no contrary indication from the language of the statute, we hold that it is the *sale* of real or personal property that is debarred, and that the word "sale" was used by the Legislature in its ordinary accepted meaning. Upon applying the word "sale" as used to the statute, a highway construction contract does not constitute a "sale" and is therefore not within the prohibition of the statute.

### CERTIFIED QUESTION NO. 5 ANSWERED

"5. May disqualification of a person, firm or corporation from making sales to any State or any of its political subdivisions under 51 O.S. 1981, § 24.3 be based upon convictions of or pleas of nolo contendere to the felonies designated therein entered in courts outside of Oklahoma?"

We answer in the affirmative.

Having heretofore determined that the legislative purpose in enacting the statute was to set certain minimal standards for qualification of certain persons to sell real or personal property to the State or any of its subdivisions, and that certain felons are thus debarred, we further conclude that the onus imposed by the Legislature was upon one convicted of one of the prescribed felonies, and not upon the geographical situs of the crime. Had the Legislature intended to distinguish between Oklahoma-sitused felons on the one hand, and non Oklahoma-sitused felons on the other hand, we are certain that the Legislature would have clearly done so, and we perceive no basis for imposing such an artificial distinc-

*Elgin Medical Center, Inc.,* 95 Ill.App.3d 517, 51 Ill.Dec. 386, 420 N.E.2d 800, 31 UCCRS 930 (1981).

17. Executive Order 81-1 provides:
"Pursuant to the provisions of Article Six, Section Seven of the Constitution of the State of Oklahoma, I hereby convoke the First Extraordinary Session of the Thirty-eight Legis-

tion in the absence of a clear legislative mandate.

### CERTIFIED QUESTION NO. 6 ANSWERED

"6. May disqualification of a person, firm or corporation from making sales to the State or any of its political subdivisions under 51 O.S. 1981, § 24.3 be based upon a conviction of or a plea of guilty or nolo contendere to a felony which does not involve fraud, bribery, corruption or sales to the State of Oklahoma or its political subdivisions, where such felony does involve or arise from sales of real or personal property to some other state or its political subdivisions?"

We answer in the affirmative.

What we have heretofore said pertaining to certified Question No. 5, applies equally here.

### CERTIFIED QUESTION NO. 7 ANSWERED

"7. Does 51 O.S. 1981, § 24.3 as enacted by an extraordinary session of the Legislature, violate Article VI, § 7 of the Constitution of the State of Oklahoma, by impermissibly expanding the subject fixed in Executive Order 81-3 which called for such session?"

We answer in the negative.

Article 6, § 7 of the Oklahoma Constitution provides:

"The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions. At Extraordinary sessions, *no subject shall be acted upon, except such as the Governor may recommend for consideration.* (Emphasis added.)

On August 26, 1981, the Governor of Oklahoma issued Executive Order 81-1,[17]

lature of the State of Oklahoma, to convene at the State Capitol at 1:00 o'clock, P.M. on the Thirty-first day of August 1981. At such Session, I recommend for consideration the following subjects:
"1. Amendment of 51 O.S. 1980 Supp., Sections 24.1 and 24.2 to add election or appointed County officers or employees to the provi-

directed to the Members of the House of Representatives and the Senate.

On September 4, 1981, the Governor amended Executive Order 81–1 by Executive Order 81–3 wherein the Governor recommended the following additional subject for consideration of the Legislature:

"Enactment of Laws pertaining to Counties and relating to a prohibition of sales of personal property to the state or any political supervision (sic) thereof, by any person, firm, or corporation who is convicted of or pleads guilty to a felony involving sales to the state of (sic) any of its political subdivisions."

Our task is to determine whether 51 O.S. 1981, § 24.3 falls within the parameter of the "subject" recommended for consideration by the Governor by Executive Order 81–3 within the meaning of Art. 6, § 7 of the Oklahoma Constitution.

The "subject" of Executive Order 81–3 was (1) enactment of laws, (2) pertaining to counties, (3) relating to debarring of sales, (4) of personal property, (5) to the state or its subdivisions, (6) by felons, (7) guilty of felonies involving sales to the state or any of its political subdivisions.

51 O.S. 1981, § 24.3 is (1) an enactment of a law; (2) it pertains to counties (and in addition to the state and any of its subdivi-

sions); (3) it relates to debarring of sales (4) of personal property (and in addition of real property); (5) to the state or its subdivisions. The legislative expansion of the statute to include political subdivisions in addition to counties, and the inclusion of sales of real property in addition to personal property does not, in our opinion, fatally deviate from the "subject" of the executive order.

In *Riley v. State*,[18] we held that the Governor's recommendation to the Legislature that "you pass such laws abolishing or eliminating offices and curtailing the number of appointees, assistants, and deputies in local, county and state government as in your judgment may be in the interest of greater economy and more efficiency in government," incompassed the same subject as the enacted statute which had the effect of eliminating the office of secretary of the state election board, as it formerly existed, and consolidating it with another office.

 If a statute is fairly within the subject of the Governor's recommendation, the response to the recommendation is exclusively within the province of the Legislature.[19]

In *Kemp v. State*,[20] The Oklahoma Criminal Court of Appeals held at 1117:

"2. Appropriation to the State Election Board from the revenues available in the General Fund of the State Treasury for the fiscal year ending June 30, 1981, the sum of One Million Dollars ($1,000,000.00) for the conduct of Special Elections occurring by reason of vacancies in offices of County Commissioners, and for reimbursement of election expenses incurred by Counties which have previously conducted special elections for such purposes during the fiscal year ending June 30, 1982.

"3. Repeal of 21 O.S. 1971, § 391 which currently provides that either party to crime of offering, giving or receiving bribes and who shall first furnish information and shall testify shall not thereafter be criminally liable."

sions thereof relating to automatic suspension from office or employment in the event any such officer or employee shall have been found guilty by a trial court of a felony in a court of competent jurisdiction and, in the event any elected or appointed State or County officer or employee who, during the term for which such person was elected or appointed, has pleaded guilty to a felony in a court of competent jurisdiction shall, immediately upon the entry of said plea, forfeit said office or employment; and that any such officer or employee upon final conviction of, or pleading guilty to, a felony shall forfeit all benefits of said office or employment, including, but not limited to, retirement benefits provided by Law; and the amendment of 51 O.S. 1981 Supp., § 10 to provide that, except for vacancies existing for which special elections have been called prior to the effective date of the act, all vacancies in the Board of County Commissions shall be filled by appointment of the Governor for the balance of the unexpired term of the Commissioner vacating said office.

18. 43 Okl. 65, 141 P. 264 (1914).

19. *State v. Tillotson*, 43 Okl. 478, 143 P. 200 (1914).

20. 35 Okl.Cr. 128, 248 P. 1116 (1926).

"The word 'subject,' as used in section 7, art. 6, is used in the same sense as in section 57, art. 5 of the Constitution, which requires that every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title," and further held that if the act itself is cognate to the general subject of the Governor's recommendation, there is a sufficient identity of subject to withstand an assault on constitutional grounds.

In determining whether a statute embraces more than one subject and that the subject of the act is clearly expressed in its title as required by Article 5, § 57 of the Oklahoma Constitution, we held in *Black v. Oklahoma Funding Bond Commission*,[21] that if the provisions of the act are "germane, relative and cognate" to the subject expressed in the title of the act, the constitutional requirement is fully met.

We therefore hold that 51 O.S. 1981, § 24.3 falls within the parameter of the "subject" recommended for consideration by the Legislature by Executive Order 81–3 within the meaning of Art. 6, § 7 of the Oklahoma Constitution.

CERTIFIED QUESTIONS ANSWERED.

SIMMS, C.J., and LAVENDER, HARGRAVE and WILSON, JJ., concur.

DOOLIN, V.C.J., and HODGES and SUMMERS, JJ., concur in all but # 4, and dissent as to # 4.

OPALA, J., dissents from answer to Question 1; concurs in result in answer to Question 2; and concurs in answers to Questions 3, 4, 5, 6 and 7.

KAUGER, J., disqualified.

---

**21.** 193 Okl. 1, 140 P.2d 740 (1943).