Dear Senate Taylor,
¶ 0 The Attorney General has received your requests for an official opinion asking, in effect:
 1. Does the enactment of section 1 of Senate Bill No. 1 (Laws 41st Legislature, 1988 Third Extraordinary Session, c. 2, p. 1857), to be codified as 60 O.S. 176 (1988), fall within the Legislature's broad discretion to enact laws which are germane, relative and cognate to the Governor's call for an extraordinary session as set forth in Executive Order 88-14?
 2. If section 1 of Senate Bill No. 1 is not germane, relative and cognate to the Governor's call for a special session, is section 1 severable from the remaining sections of Senate Bill No. 1, so that the remaining sections are valid?
 I.
¶ 1 Pursuant to Executive Order 88-14, the Oklahoma Governor called and convoked the Third Extraordinary Session of the 41st Oklahoma Legislature. The authority of the Governor to convoke special sessions is found in Article VI, Section 7 of the Oklahoma Constitution, which provides:
 The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration.
¶ 2 Pursuant to this provision, the Executive Order provided that the Third Extraordinary Session:
shall be confined to consideration of the following:
 1. Concurrence with the Governor's declaration of emergency pursuant to Article X, Section 23, of the Oklahoma Constitution, said declaration having been filed with the Secretary of State on the day and date of this Order;
 2. Appropriation and special appropriation for the purpose of safeguarding the public safety by relieving state prison overcrowding, adding to prison space and work programs, renovating and expanding prison facilities, and operating said facilities, and relieving juvenile detention and shelter space shortages by expanding juvenile detention and youth shelter capacity;
 3. Amendment of the Oklahoma Statutes, Title 68 O.S. 2357.7 and related sections, for the purpose of attracting venture capital to the state.
¶ 3 Senate Bill No. 1 (Laws 41st Legislature, 1988 Third Extraordinary Session, c. 2, p. 1857), was a part of the legislation enacted in the 1988 Third Extraordinary Session in response to Executive Order 88-14. Your question concerns the provisions of section 1, which amended 60 O.S. 176 (1981), as last amended by section 1 of Enrolled Senate Bill No. 498 of the Second Session of the 41st Oklahoma Legislature (c.111, p. 391). The sole amendment to 60 O.S. 176 was the addition of language in subsection (g). That section, prior to amendment in the extraordinary session, authorized public trusts created pursuant to the provisions of 60 O.S. 176 to acquire lands by use of eminent domain, and limited the use of that power "to the furtherance of public purpose projects involving revenue-producing utility projects of which the public trust retains ownership[.]" The Legislature, in the Third Extraordinary Session, enlarged the power of eminent domain with the following new language.
 [P]rovided, for public trusts in which the State of Oklahoma is the beneficiary the exercise of the power of eminent domain may also be used for public purpose projects involving air transportation.
60 O.S. 176(g) (1988).
¶ 4 In essence, you ask whether the foregoing language is, under the provisions of Article VI, Section 7, of the Oklahoma Constitution, properly included within the subjects recommended by the Governor for consideration by the Legislature. Your question is raised, in part, by virtue of the Governor's "message for Senate Bill 1," (Laws 41st Legislature, 1988 Third Extraordinary Session, c. 2, p. 1866). That message states that 1 of the Bill is "improperly outside the scope of the Third Extraordinary Session as called through Executive Order 88-14," and therefore is unconstitutional and "a nullity." Of course, only the courts have the power to ultimately and authoritatively decide the unconstitutionality of a statute. York v. Turpen,681 P.2d 763 (Okla. 1984). However, their very broad and permissive standards in the area now under consideration in your question lead us to believe that 1 of this statute would pass constitutional muster.
¶ 5 The leading case on whether an act of the Legislature is unconstitutional as outside the scope of the Governor's call for an extraordinary session of the Legislature, is Kemp v. State,248 P. 1116 (Okla. 1926). In that case, the Court examined the meaning of the word "subject," as used in Article VI, Section 7, and found that it is used in the same sense as in Article V, Section 57 of the Constitution, which requires that every act of the Legislature shall embrace but one subject which shall be clearly expressed in its title. The Court, quoting from various cases construing Article V, Section 57, stated:
 The term "subject," as used in these provisions, is to be given a broad and extended meaning, so as to allow the Legislature full scope to include in one act all matters having a logical or natural connection. If all parts of an act relate directly or indirectly to the general subject of an act, it is not open to the objection of plurality. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects, that by no fair intendment can be considered as having any legitimate connection with or relation to each other.
248 P. at 1117 (Emphasis added).
¶ 6 The broad latitude granted the Legislature by the courts in construing Article V, Section 57, which is, under Kemp, the proper test for construction of the term "subject" under Article VI, Section 7, has been reaffirmed in numerous more recent cases.See Pierce v. Western Casualty and Surety Co., 666 P.2d 1313
(Okla.App. 1983); Mistletoe Express Service v. United ParcelService, Inc., 674 P.2d 1 (Okla. 1983); King v. State,640 P.2d 983 (Okla.Crim.App. 1982), cert. denied, 456 U.S. 1011,102 S.Ct. 2306, 73 L.Ed.2d 1307 (1982). A recent Oklahoma Supreme Court decision once again affirms these principles. In GilbertCentral Corporation v. State, 716 P.2d 654 (Okla. 1986), the Governor's Executive Order calling the Legislature into extraordinary session recommended, as one subject for consideration of the Legislature:
 Enactment of Laws pertaining to Counties and relating to a prohibition of sales of personal property to the state.
716 P.2d at 665.
¶ 7 During the extraordinary session, the Legislature enacted51 O.S. 24.3 (1981), which was, in the words of the Court:
 (1) An enactment of a law; (2) It pertains to counties (and in addition to the state and any of its subdivisions); (3) it relates to debarring of sales (4) of personal property (and in addition of real property)[.]
Id.
¶ 8 The issue before the Court was whether the "legislative expansion of the statute to include political subdivisions in addition to counties, and the inclusion of sales of real property in addition to personal property," was a fatal deviation from the "subject" of the Executive Order. Id. The Court reiterated the rule that if a statute "is fairly within the subject of the Governor's recommendation, the response to the recommendation is exclusively within the province of the Legislature." Id., citingState v. Tillotson, 143 P. 200 (Okla. 1914). Further, the Court relied on Kemp, supra, and on Black v. Oklahoma Funding BondCommission, 140 P.2d 740 (Okla. 1943), finding that if the provisions of the act are germane, relative and cognate to the subject expressed in the title of the act, the constitutional requirement is fully met. 716 P.2d at 666. Thus, in Gilbert the Court upheld the constitutionality of the statute enacted pursuant to the Executive Order at issue.
¶ 9 With this in mind, we can now examine the provisions of section 1 of Senate Bill No. 1, in light of the Executive Order. The third paragraph of the Executive Order, and the only one relevant here, authorized the "[a]mendment of Oklahoma Statutes, Title 68 O.S. 2357.7 and related sections, for the purpose of attracting venture capital to the state." In fact, several statutes were amended, including 68 O.S. 2357.7 and 68 O.S.2357.8 (1987), which provide for tax credits for qualified venture capital companies in Oklahoma (amended in sections 2 and 3 of S.B. No. 1); and 74 O.S. 5061.6 (1987), which relates to the Oklahoma Capital Investment Board (section 4, S.B. No. 1). Moreover, 74 O.S. 5061.8 (1987), was amended and two other statutes, codified as 74 O.S. 5061.10 and 74 O.S. 5061.11
(1988), all relating to the Oklahoma Capital Investment Act, were newly enacted (sections 4, 6 and 7, S.B. No. 1). Finally the aforedescribed section 1 was enacted, which amended 60 O.S. 176
(1981) (as previously amended), and authorized state beneficiary public trusts to exercise the power of eminent domain for public purpose projects involving air transportation.
¶ 10 The question thus becomes whether 60 O.S. 176 may be construed as a section "related to" 68 O.S. 2357.7, and whether its amendment allowing the exercise of eminent domain for projects involving air transportation relates to or can be said to logically further the purpose of attracting venture capital to the state. As noted above, 68 O.S. 2357.7 sets forth the conditions under which a tax credit may be allowed "for investments in qualified venture capital companies whose purpose is to establish or expand the development of business and industry in Oklahoma." A narrow view of the Governor's Executive Order might lead to the conclusion that only legislation relating to tax credits, or legislation confined to certain statutes found in title 68, relating to the provisions set forth in 68 O.S.2357.7 et seq., was authorized. Such a view would, however, also nullify sections 4, 5, 6 and 7 of the bill, and would, we believe, be contrary to the broad latitude conferred on the Legislature by the Court, to enact legislation pursuant to the Governor's call relating to "all matters having a logical or natural connection" to the subject of the call. Kemp, supra.
¶ 11 Viewed from the perspective of the Kemp Court, we cannot say that the exercises of the power of eminent domain for public purpose projects involving air transportation is "by no fair intendment" without connection to the purpose of attracting venture capital to the state. Kemp, supra. Whether, in fact, the amendment of 60 O.S. 176 (1981), through the provisions of section 1 of Senate Bill No. 1, was for the purpose of attracting venture capital, or whether it will have that effect, is beyond the scope of an Attorney General Opinion. In light of the long-standing presumption of the constitutionality of legislative enactments and the court's particular deference to legislation in this area of the law, we find the statute "is fairly within the subject of the Governor's recommendation[.]" Gilbert,716 P.2d at 665. This being so, "the response to the recommendation is exclusively within the province of the Legislature," id., and cannot be said as a matter of law to be unconstitutional.
 II.
¶ 12 Your second question asks whether, should we find section 1 of Senate Bill No. 1 to be invalid, the provisions of section 1 are nevertheless severable such that the remaining sections of S.B. No. 1 remain viable in spite of the fact the legislation contains no severability clause.
¶ 13 In light of our response to question No. 1, there is no need to respond to your second question. We would, however, refer you to A.G. Opin. No. 83-132, in which we held:
 [T]he existence of an unconstitutional feature in a statue [sic] does not necessarily render the act unconstitutional in its entirety. If the objectionable part of a statute is severable in such a way that the legislature would be presumed to have enacted the valid without the invalid portion, the failure of the latter will not necessarily render the entire statute void and the statute may be enforced as to those portions which are constitutional. Wood Co. v. Russell, 226 P. 1040 (Okl. 1924); Battles v. State ex rel. Okla. Comm. for Crippled Children, 244 P.2d 320 (Okla. 1952).
 ¶ 14 It is, therefore, the official opinion of the AttorneyGeneral that the provisions of 60 O.S. 176 (1988), enacted assection 1 of Senate Bill No. 1 (Laws 41st Legislature, 1988 ThirdExtraordinary Session, c. 2, p. 1857), are fairly within thesubject of the Governor's Executive Order 88-14, recommendingcertain subjects to the Legislature for consideration in its 1988Third Extraordinary Session, thus they do not as a matter of lawviolate the provisions of Article VI, Section 7 of the OklahomaConstitution, which limit the subject matter of extraordinarysessions to those the Governor may recommend for consideration.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
SUSAN BRIMER LOVING FIRST ASSISTANT ATTORNEY GENERAL